[No. 14119.   Department Two.—August 10, 1893.]

DENNIS DALEY, APPELLANT, *v.* JOHN QUICK, RE-
SPONDENT.

LANDLORD AND TENANT—INJURY TO TENANT—DEFECTIVE WOODSHED—FALSE
REPRESENTATIONS — EVIDENCE — AGENCY — NEW TRIAL. — Where a tenant who
was injured by the falling of a defective woodshed, in an action against the
landlord for damages for the injury, alleged in his complaint that the landlord
falsely represented to him that the woodshed was safe and suitable as a place
to store fire-wood, knowing the contrary to be true, and that the tenant was
induced thereby to continue the tenancy, and place fire-wood therein, the
allegations of fraud and misrepresentations are essential to his cause of action ;
and where issue was taken upon them, and the evidence failed to show that any
wilful misrepresentations were made by the landlord or by any one authorized
to represent him, and merely showed that a person authorized only to make
repairs, and not authorized to make false representations, stated that the shed
was safe, and there was no proof that he did not know or believe it to be
unsafe, or that he had no reasonable ground for believing the representations to
be untrue, and no evidence that any fact was suppressed that the landlord was
bound to disclose to the tenant. *Held,* that a verdict for the tenant was prop-
erly set aside, and a new trial of the action properly granted by the court.

ID.— DEFECTS IN RENTED PREMISES— CAVEAT EMPTOR— NOTICE OF DEFECTS—PRE-
SUMPTION —ACCEPTANCE OF RISK BY TENANT— REPAIRS. —The principle of
*caveat emptor* applies to the occupation of rented premises by a tenant as to
any defects which are inherent and unknown to the landlord, and the landlord
is not liable to the tenant for injuries received where he has done all that a
reasonable, prudent man would have done toward fitting the place for occupa-
tion, and has not kept the tenant in ignorance of defects known to him ; and
when it would appear from an examination of the premises, such as an ordinarily
prudent man would make before residing upon them, that they were unsafe,
and that the defect rendering them so is discernible, the tenant is presumed to
have had notice of such defect, and to have accepted the risks incident thereto
if he occupies the premises and neglects to insist upon repairs, or to make
repairs at the landlord's expense.

APPEAL from an order of the Superior Court of the City
and County of San Francisco granting a new trial.

The facts are stated in the opinion.

*A. Morganthal,* for Appellant.

Fox had necessary authority to make the representations.
(Civ. Code, sec. 2319 ; Mecham on Agency, secs. 733, 734 and
note, 739, 743.)   Whether Fox was the agent of the defendant
was a question for the jury, and their verdict should not be dis-
turbed.   (*Biggerstaff* v. *Briggs,* 3 West Coast Rep. 353.)

*Robert H. Countryman,* and *Jarboe, Harrison & Goodfellow,*
for Respondent.

There is no implied contract on the part of a landlord to keep leased premises in repair, and no implied warranty that leased premises are safe, well built, or fit for any particular purpose or use. (*Brewster* v. *De Fremery*, 33 Cal. 341; *Van Every* v. *Ogg*, 59 Cal. 563; *Sieber* v. *Blanc*, 76 Cal. 173; *Willson* v. *Treadwell*, 81 Cal. 58; *Tatum* v. *Thompson*, 86 Cal. 203; *Green* v. *Redding*, 92 Cal. 548; *Jaffe* v. *Harteau*, 56 N. Y. 398; 15 Am. Rep. 438; *Schermerhorn* v. *Gouge*, 13 Abb. Pr. 315.) A landlord's liability to his tenant is limited ·by the extent of the privilege conferred upon the tenant by the statute. (*Van Every* v. *Ogg*, 59 Cal. 563; *Sieber* v. *Blanc*, 76 Cal. 173; *Willson* v. *Treadwell*, 81 Cal. 58.) Fox was a mere servant and not the agent of defendant. (*Beckman* v. *Wilson*, 61 Cal. 335; *Robinson* v. *Nevada Bank*, 81 Cal. 106; *Grant* v. *Ede*, 85 Cal. 418; 20 Am. St. Rep. 237; *Harris* v. *San Diego Flume Co.*, 87 Cal. 526; *Swain* v. *Burnette*, 89 Cal. 564; *McCord etc. Co.* v. *Wollpert*, 89 Cal. 271; *Williams* v. *Mitchell*, 87 Cal. 532.) Even if Fox was the agent of defendant the alleged representations were not shown to have been either false or fraudulent, nor was plaintiff in any manner misled by them or ignorant of the true facts. Fraud is never presumed but must be proven. (*Senter* v. *Monroe*, 77 Cal. 347; *Applegarth* v. *McQuiddy*, 77 Cal. 408; *Estep* v. *Armstrong*, 69 Cal. 536; *Colton* v. *Stanford*, 82 Cal. 351; 16 Am. St. Rep. 137; *Champion* v. *Woods*, 79 Cal. 17; 12 Am. St. Rep. 126; 8 Am. & Eng. Encycl. of Law, p. 636; *Board of Commissioners* v. *Younger*, 29 Cal. 172; *Ward* v. *Packard*, 18 Cal. 391.)

SEARLS, C.—Appeal from an order granting a new trial.

Plaintiff rented from the defendant, who was the owner thereof, from month to month a portion of the upper floor of a dwelling-house, known and designated as No. 3 Tehama Street, San Francisco, and took possession on or about March 21, 1887. Plaintiff continued to occupy the premises as a tenant of the defendant until October 25, 1888, on which last-named day, while in the act of piling three pieces of wood weighing in the aggregate about one hundred and fifty pounds in a woodshed situate upon the upper floor, and contiguous to the rooms occupied by him, the floor gave way, and plaintiff fell with it to the

ground, whereby his foot was fractured and his ankle dislocated. The complaint after setting out the ownership of defendant, the tenancy and occupancy of the plaintiff, proceeds in substance to charge that defendant, with a view to retaining plaintiff as a tenant, falsely and fraudulently represented to him that the woodshed was safe and secure, and suitable as a place to store fire-wood; that plaintiff did not know the fact, but believing the statements to be true, was thereby induced to continue the tenancy and to place the wood therein, whereby he was injured; that defendant knew the condition of the property, and that it was unsafe and dangerous, and with full knowledge of all the facts falsely and fraudulently and with intent to defraud plaintiff made the representations, etc. The answer negatives all the allegations of the complaint tending to establish neglect, fraud, misrepresentations, or any representations in the premises. Plaintiff had a verdict for one thousand dollars. Defendant moved for a new trial, which motion, as before stated, was granted, and plaintiff appeals.

The following is the opinion of the learned judge who presided in the court below, rendered upon granting the motion for a new trial, and which appears in the transcript:—

"This action was brought to recover damages for personal injuries sustained by the plaintiff while he was a tenant of defendant. It appears from the complaint that the defendant being the owner of certain premises, let them to plaintiff on the twenty-first day of March, 1887; that appurtenant to said premises was a woodshed designed to be used in connection with the occupation of said premises as a dwelling; that on the twenty-fifth day of October, 1888, while the plaintiff was in the act of putting wood in said shed, the underpinning thereof gave way and said shed fell to the ground, a distance of about twelve feet, carrying with it the plaintiff, and that by reason thereof he suffered personal injuries. It is further alleged that the defendant made certain representations to the plaintiff regarding the safety and suitableness of said woodshed for the purpose for which it was intended. These representations, it is claimed, were false and known to be false by the defendant at the time, and fraudulently made by him for the purpose and with the intent of inducing the plaintiff to rent

said premises and occupy them as a dwelling, the advantage accruing to the defendant thereby being the rental or return for the use of said premises.

"The answer of defendant put in issue, among other things, the allegations relating to the defendant's conduct and representations. Upon a trial verdict was found in favor of the plaintiff, and the defendant now moves for a new trial.

"Under the ruling of *Sieber* v. *Blanc*, 76 Cal. 173, and *Willson* v. *Treadwell*, 81 Cal. 58, without these allegations of fraud and misrepresentation, the complaint would fail to state a cause of action. Holding that it became the duty of the defendant when he offered the premises for the occupation of human beings to put them in a condition fit for such occupation, it could not be assumed that he failed in this duty, because of the long lapse of time between the commencement of the tenancy and the time of the accident causing the injuries. This then became the subject of proof, and the record does not show that any was offered. The plaintiff, however, distinctly disavows this as the theory of his right to recover. He does not claim that his right of action springs out of the neglect of the defendant to make the premises fit for occupation by human beings, but he says that after he had rented the premises and before he had used the woodshed, the defendant through an agent represented to him that the woodshed was safe for the storage of wood, and that he relied upon such representation, which was in fact false, and made for the purpose of inducing him to occupy said premises and to store wood in said shed.

"The defendant upon this motion contends that there is no evidence to warrant the verdict upon this or upon any other ground; and further, that if any representations were made upon the subject, that they were not made by the defendant, or by any one authorized by him, directly or ostensibly, as agent or otherwise, to make them.

"The principle of *caveat emptor* applies to cases of this character. The obligation imposed by statute upon a lessor of property intended for the occupation of human beings to put it in a condition fit for such occupation, must be limited by the rules and considerations ordinarily governing men in such matters. A lessor of such property would be liable for injuries resulting

from defects in the premises known to him and unknown to the lessee because arising from some cause not extraneous, if he allowed the lessee to occupy the premises in ignorance of the risks. This principle is illustrated in the case of *Baxter* v. *Roberts*, 44 Cal. 187; 13 Am. Rep. 160. Whenever the defect is inherent and unknown to the lessor he is not accountable, nor can he be held when he has done all that a reasonably prudent man would have done towards fitting the place for occupation. It is as much the duty of the lessee to satisfy himself that the premises are safe as it is of the lessor to make them so; and when it would appear from an examination, such as an ordinarily prudent man would make before venturing to reside in or upon the premises, that they were unsafe, and the defect rendering them so discernible, the lessee is presumed to have had notice of such defect and accepted the risks incident thereto if he occupies the premises. Now to apply this rule to the case. There is no testimony tending to show that the woodshed was unsafe at the beginning of the tenancy, except that one year and a half after that time that it fell down with the plaintiff, unless it be the declaration by the plaintiff to the supposed agent of the defendant on the day after he moved in, that the platform upon which the shed was situated was 'a little shaky.' It does not appear wherein it was shaky, but it does appear that the joist underneath the shed gave way at the time plaintiff was hurt, and this was the cause of the accident. There was no evidence other than the mere fact that it gave way that the joist was not properly secured. This counsel for plaintiff considered unnecessary to prove, basing his action upon the fact that the shed was unsafe at a time when the supposed agent of the defendant assured the plaintiff in answer to an inquiry that the shed was safe.

"The idea seems to be that having been so assured that plaintiff was not called upon to look further than the assurance; that if he had not been so assured that he would have examined for himself and discovered the defect and unsafeness of the shed. I cannot presume that he would have discovered the defect, the total lack of evidence showing what it was leaves it an open question as to whether it was inherent and undiscoverable or extraneous and open to detection; but assume

that he would have discovered it, and thus been enabled to avoid the injuries, was he justified in relying upon the assurance from him in view of the fact that he suspected the safety of the shed from the time he took the house, and continuously spoke of its unsoundness, up to the time he was hurt? Under the circumstances, I do not think so. He evidently doubted the truth of the assurance or he would not have continued his inquiries, and there was no occasion for him to accept them. The statute gave him the right to repair the shed at the defendant's expense, provided the repairs did not exceed the amount of one month's rent, if the defendant failed to do so after notice to repair, or he could vacate the premises. He did not demand that the premises be repaired, but contented himself with the inquiry as to whether they were safe or not. He took the opinion of the supposed agent of the defendant as to their safety, and did not consult his own intelligence in the matter. The color of reason in his favor upon this point rises from the fact that he testifies that he did not have access to that part of the premises which would have enabled him to examine the joist of the shed, and that the defendant's so-called agent did not have such access. But he does not show that he ever tried to gain access to that part of the premises, or that he could not have done so by applying to the defendant or to the tenant occupying that part of them.

"It, however, appears that this part of the premises was occupied by tenants of the defendant, and that he had no more access to them than the plaintiff had, and that they were used by the ash-man, and that wood and coal was kept there. The place was accessible by a door from the outside, and through Hines, the grocer's premises. Hines was a tenant and kept the key to the door outside. It is plain that had the plaintiff made the least effort to examine the understructure of the shed he could have done so. He presumed that this so-called agent of the defendant had examined it or knew its condition, because of his frequent appearance about the premises and his supervision and repair of them when called upon by the tenants. This brings us down to the question as to whether this person was the agent of the defendant in that sense that would authorize him to bind the defendant by his representations,

admitting for this purpose of the question that he did make representations which would bind him. The evidence shows that he did not let the premises, another agent had charge of that, but that he did make repairs whenever called upon to do so by the tenants. He was clearly the agent for that purpose, but he was not made the judge of whether repairs were necessary or not, nor was he authorized to assure the tenants that the premises were safe. They could call upon him to repair and he would make the needed repairs, but if he did not do so they would have had the option of making the repairs (those within the rule named) or vacating the premises. His failure to make needed repairs which were called to his attention, *or his assurance that they were not necessary*, did not take away from the tenant the right to make the repairs himself or to vacate. His assurance that they were unnecessary was equivalent to a refusal to make them, and its effect cannot be explained further.

"Since no cause of action has been shown against the defendant on account of any breach of duty in his capacity strictly as landlord or lessor, it becomes important to determine whether, losing sight of that relation except in so far as it incidentally forms a part of the subject, the representations made to the plaintiff were sufficient to sustain an action upon the ground of fraudulent deceit. Section 1709 of the Civil Code provides that: 'One who wilfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.' A deceit within the meaning of this section is defined as 'the suggestion as a fact of that which is not true, by one who does not believe it to be true.' If this be the ground relied upon, the evidence is wholly insufficient to show, taking the representations to have been false, that the person making them did not believe them to be true. 'The assertion as a fact of that which is not true by one who has no reasonable ground in believing it to be true,' is also a sufficient deception to have an action upon. But in this case there is no evidence tending to show that the person making the representations had no reasonable ground for believing them to be true. We have seen that it was not the duty of the defendant or his agent any more than that it was the duty of the plaintiff to discover the defects in the shed, and it is nowhere

shown that the so-called agent of the defendant had any less reason to believe that the shed was safe and to so declare than the plaintiff had in relying on the representations. This obser-vation also applies to the third subdivision of the section of the Civil Code (1710) defining deceit, namely: 'The suppression of a fact by one who is bound to disclose it, or who gives infor-mation of other facts which are likely to mislead for want of communication of that fact.'

"The evidence does not show that any such fact was sup-pressed, or that any fact in connection with the subject was communicated to the plaintiff which was calculated to throw him off his guard or to shut off further investigation. To entitle him to rely upon the representations it must have appeared that it was the duty of the defendant to possess the information inquired for, and by reason of their relation to impart it to the plaintiff. It does not appear that either of these requisites existed, and I hold that no case for deceit has been proven.

"I am also satisfied from a careful review of the evidence that the person making the representations was not authorized directly or by the conduct of the defendant to make them. He was not the agent of the defendant for any such purpose.

"It follows from the foregoing that the motion for a new trial must be granted, and it is so ordered.    GARBER, J."

The foregoing contains a correct exposition of the law appli-cable to the case, and is hereby adopted as the opinion of the court, and for the reasons given therein the order appealed from should be affirmed.

VANCLIEF, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion, the order appealed from is affirmed.

MCFARLAND, J., FITZGERALD, J., DE HAVEN, J.