BERTHA L. WHITMORE, Admx.,

*vs.*

ORONO PULP AND PAPER COMPANY.

Penobscot.    Opinion January 26, 1898.

*Sales.    Lease.    Caveat Emptor.    Nuisance.*

The common law rule of caveat emptor is still in force in this state and applies to the lease as well as to the sale of property.

The owner of private property, unaffected by any public use, owes to a prospective lessee or his servant no duty of exercising ordinary care to ascertain and apprise him of unknown defects in the property to be leased, where such prospective lessee has equal opportunity to ascertain the defects.

Machinery or fixtures which are harmless when at rest and dangerous only when in use are not nuisances per se as between a lessor and a lessee or his servant.

*Nugent* v. *B. C. & M. R. R.*, 80 Maine, 62, distinguished.

ON MOTION AND EXCEPTIONS BY DEFENDANT.

The plaintiff in this action is the administratrix of the estate of her husband, who was in the employ of the Bangor Pulp & Paper Company, the lessee of the defendant company, and was injured, while so employed, by the explosion of a digester in its mill and afterwards died from the effects of the injury. The plaintiff had previously brought an action for the same injuries against the Bangor Company and recovered a judgment, but the judgment was unsatisfied as that company became insolvent.

The defendant company is the lessor of the mill under a lease dated October 1st, 1892, by which it leased its mill and property to the Bangor Pulp & Paper Company for the term of twenty-five years with the right, after ten years, to purchase; the lessee was to keep the mills and property insured and it was provided in the lease that: "Said lessee shall keep the property substantially in repair." The lessor had no right to inspect any secret process which the lessee should use.

The Bangor Company lessee went into possession of the premises

on the first day of October, 1892, and was operating the mills at the time of the accident on October 11th. The writ alleged that the defendant company knew, or ought to have known by the exercise of due diligence, when it leased the mill that the digester which exploded was in a weak and dangerous condition; and that the injury came from want of care on the part of defendant company in leasing the mill with defective digesters.

The defendant company denied these allegations. It claimed that there was no testimony on part of plaintiff that defendant company knew that the digesters were in an unsafe condition; and further claimed that the only testimony as to its unsafe condition was the pieces of the digester picked up after the explosion showing corrosion of the metal, and the testimony of an expert that they indicated that these pieces were pitted and corroded to a considerable extent. The defendant company offered testimony showing that the digesters were purchased of manufacturers of the highest standing; were of the highest cost and were carefully examined both at the time of the purchase and from time to time during use —the last examination being in September before the explosion and report made in writing that they were in good condition; they had been in use only about eighteen months, and the company was assured that they would be good for ten or fifteen years; was assured and believed that they were in good and safe condition, and there was nothing to lead them to believe that they were unsafe.

The verdict was for the plaintiff; the defendant moved that the verdict be set aside as against law and evidence and alleged exceptions to the rulings of the presiding justice.

The exceptions were to those parts of the following rulings and instructions of the presiding justice that are included in brackets:

"I will rule on another point that they [defendants] make, and that is, [they offer a judgment against another company, the Bangor Pulp & Paper Co., as a bar or estoppel here; and I rule against that proposition, and that need not trouble you at all.] 'As a legal proposition I rule that if that judgment remained in no part satisfied, nothing appearing more than that they recovered judg-

ment and took out an execution, getting no value with it, [that it is not a bar to this action,] that while the other company has been held liable, this company may also be held liable if the evidence satisfies you. But I say this, that you should not be influenced the least in the world in your consideration of the questions here, by the fact merely that another judgment was recovered against another company. You are not to give judgment here because there was judgment in another case."

" Now the defense set up by the defendants is this: They say they were not operating the mill at that time. That is, when the accident happened on the 11th, they were not in possession, and therefore they are not liable for what was done by the other company. But the plaintiff invokes the principle which I shall rule, if you are satisfied of it, to be sufficient to enable him to recover against these defendants. That is, if they were the owners of this property and had been conducting the business there, and using the digesters until the digesters in question became dangerous to use and knew that fact, or they did not take, in the use of it, due and ordinary care and then leased the same premises to the Bangor Company to be used in the same way, with a continuation of the same business,— the defendants, the lessors receiving rent and compensation for the use of the property,— they might be as liable as the Bangor Company would have been had the accident occurred on the first day of October, when the defendants were in possession. That is, they are liable for what took place afterwards unless the dangerous condition, or condition of the nuisance, did not exist when they sold it, although it existed ten days afterwards.

" I find authority enough to sustain the ruling prima facie; that is, for you to sustain it until the full court overrules it, and I give the ruling that the plaintiff should satisfy you that it was a dangerous condition, amounting to nuisance, which existed when the lease was made, rendering the defendants liable. Now it is on this principle, Mr. Foreman: Supposing your neighbor erects a nuisance, some building, amounting to a nuisance, on his own premises, to your injury, and then he sells it to somebody else. Both parties might be liable, the first man for creating the nuisance,

the lessor, and the second the lessee, for continuing the nuisance. They might each be liable; not jointly, but separately; one party for putting in the nuisance and the other party for continuing the nuisance.

"Now what is a nuisance? Lord Coke, in his blunt way, said it was doing anything illegal to the injury of another, by way of trade. The modern, general definition is, that a man who uses even his own property, real property or personal property unreasonably, or unwarrantably, or unlawfully, to the injury of another, not having a right to do it, is guilty of nuisance; and, if it be a dangerous thing besides being noxious and disagreeable, then it is otherwise an offense. If it be dangerous to life by its continuance in use, then it is even more a nuisance, or more emphatically a nuisance.

"The plaintiff claims that here were premises dangerous to use, such as could not be legally or warrantably used, because, in the situation in which things were, it would be dangerous to other persons.

"The counsel for the defendant says that could not be extended to the lessee or employee of the lessee. There is some question about it, but I rule, for the purposes of this trial, that the employee, such person as the deceased was—he could not protect himself if I should rule as the defendant claims,—so I rule, for the purposes of this trial, that [if the defendants are liable on all other grounds, the rule can be so applied as to make them liable to this employee although in the service of the lessee under such an instrument as is produced here, which is a lease or contract] under certain conditions."

"The plaintiff alleges negligence, and, therefore, he must prove negligence. · The burden of proof is on him to prove negligence. It does not follow at all that they are guilty merely from the accident happening. It does not follow that anybody was in fault merely from the existence of the accident, because it may be an inevitable accident for which nobody is responsible. And that is the defense here—that this must be regarded an inevitable accident for which no one at all was responsible. The way to get at

what negligence may be is to define the correlative terms of ordinary care. [The duty which rested upon the defendants was that of ordinary care.] Not of extraordinary care, if distinction is to be made between the two kinds of care, or between negligence and extraordinary negligence. But, certainly, it is true, as claimed by the plaintiff, that what would be ordinary care must depend upon the circumstances. What would be ordinary care in some circumstances would not be in other circumstances. The more the exigency, the greater the danger and risks at stake, the more care to make ordinary care."

*P. H. Gillin and C. J. Hutchings,* for plaintiff.

Prior judgment not a bar: *Cleveland* v. *Bangor,* 87 Maine, 259, and cases cited.

Liability of lessor: An owner being out of possession and not bound to repair is not liable for injuries to a third party received in consequence of his neglect to repair. But where a nuisance existed when the property was leased to the tenant, the landlord may be held liable. The tenant is liable for the nuisance thus retained by him, even though the nuisance was on the premises when leased to him. And both landlord and tenant, under the circumstances, are jointly and severally liable for the continuance of the nuisance, supposing the nuisance to be on the property when leased, or to be put there with the landlord's connivance. Wharton on Negligence, 2nd Ed. § 817; *Oxford* v. *Leathe,* 165 Mass. 254; *Tomle* v. *Hampton,* 129 Ill. 379; *Clifford* v. *Atlantic Cotton Mills,* 146 Mass. p. 49; *Daley* v. *Savage,* 145 Mass. p. 40; *Nelson* v. *Liverpool Brewery Co.,* 2 C. P. D. 311; *Saltonstall* v. *Banker,* 8 Gray, 195; *Timlin* v. *Standard Oil Co.,* 126 N. Y. 414, (22 Am. St. Rep. 845, and cases); *Jackman* v. *Arlington Mills,* 137 Mass. 277; *Nugent* v. *B. C. & M. R. R.,* 80 Maine, 62.

The liability does not arise upon any action of contract, but upon the obligation which the landlord owes the tenant not to expose him to danger of which the landlord knows, or could know by reasonable care. Nor is it done away with by the fact that the parties examined the premises and the tenant did not discover the defect. *Hines* v. *Wilcox,* 96 Tenn. 148 (33 S. W. Rep. 914);

*Stenberg* v. *Wilcox, Ib.* p. 163, and citing Wood L. & T. 2nd. Ed. p. 1297.

Counsel also cited: *Scott* v. *Simons*, 54 N. H. p. 426; *Samuelson* v. *Cleveland Mining Co.*, 49 Mich. 170; *Joyce* v. *Bliss*, 15 R. I. p. 558; *Albert* v. *State*, 66 Md. 325; *Burbank* v. *Bethel Steam Mill Co.*, 75 Maine, p. 383.

*C. P. Stetson and C. J. Dunn*, for defendant.

SITTING: EMERY, HASKELL, WHITEHOUSE, WISWELL, SAVAGE, JJ.

EMERY, J. The defendant company, the Orono Pulp and Paper Company, constructed and for a few years up to October 1, 1892, operated a pulp mill in Orono. On that day it leased its mill and plant to another and distinct corporation, the Bangor Pulp and Paper Company, for twenty-five years. This latter company, the lessee, took possession of the leased property on the same day and for some little time thereafter operated it as a pulp mill on its own account. By the terms of the lease the Bangor Company, the lessee, was to have the exclusive possession of the property and was to keep it in substantial repair, the lessor reserving the usual right to enter upon and view the premises at times convenient to the lessee. The lessor made no stipulation as to the condition of the property.

The plaintiff's intestate, Austin J. Whitmore, had entered into the employ of the lessee, the Bangor company, and was in its employ, upon the premises thus leased and operated by it, on the 11th day of October, 1892. On that day one of the digesters, a large cylinder of deoxydized bronze and an essential part of the machinery of the mill, exploded while Mr. Whitmore was at work near it in the line of his duty. He was so severely injured by the explosion that he died a few weeks afterward. The explosion resulted from the inability of the digester to resist the usual pressure of steam injected into it in the course of the business of the mill.

For this injury the plaintiff, as administratrix, first brought an

action against the Bangor company, the lessee operating the mill and plant, and her husband's employer, counting upon the negligence of that company, and recovered judgment upon the ground that that company had not exercised due care in examining into and ascertaining the real condition of the digester which in fact was too weak to withstand the steam pressure used. By reason of the insolvency of that company the plaintiff has not been able to collect any part of that judgment.

The plaintiff thereupon brought this action against the lessor of the mill and plant, the Orono Pulp and Paper Company, counting upon its neglect of its duty in the matter of the faulty digester. The defendant company did not construct the digester, but purchased it from a reputable manufacturer of digesters. In selecting, purchasing and setting up this digester, it is not questioned that the defendant company exercised due care. At the first it was sufficiently strong. It was weakened after a time by the peculiar and continued action of the necessary chemicals upon the particular metal of which it was composed. This action was wholly confined to the interior of the closed cylinder, and was invisible from the outside.

Granting, that at the time of the execution of the lease and the change of the possession and control of the premises from the lessor to the lessee, the digester was then in fact too weak for its purpose, it does not appear from the evidence that any officer or agent of the lessor company was actually aware of that condition of the digester, or that knowledge of it could have been obtained, except by actual examination of the interior or by inference from sufficient technical learning as to the peculiar action of the particular chemicals upon the particular metal. The outward visible indications all were that the digester was as strong as ever.

The defendant company did not make the necessary examination, before or at the time of leasing, and did not possess the requisite technical learning to make the correct inference without examination; but there is no suggestion of fraud or concealment in the matter. It may be that this omission and ignorance were a breach of a duty owed by the defendant company to its own employees or

servants, but that proposition alone will not sustain the plaintiff's action. A person may owe a duty to one individual, or class, which he does not owe to another. The duty may depend wholly upon the relation between the parties. The plaintiff must, therefore, maintain the proposition that the defendant owed to the servants of its lessee the duty of making the requisite examination, or of possessing the requisite technical learning, and communicating the results before turning the plant over to the lessee. Whether the law of this state supports that proposition is the question presented.

It should be noted, at the outset, that the defendant company is not a public corporation, engaged in a public business, enjoying public franchises and owing special duties in consequence thereof. It is a private corporation, transacting a purely private business, and dealing in this instance with another private party. Hence, the rules and principles applied to owners of railroads, wharves, elevators, public halls, etc., do not necessarily govern this case. Again, the plaintiff's intestate was not upon his own premises, nor upon any public road or place at the time of the explosion, but was voluntarily upon the leased premises under a contract with the lessee only. Hence, the doctrines of the law of liability for nuisances to strangers or the public are not necessarily applicable. It should be further noted that the lessee engaged to make repairs,— that the lessee had as much ability and opportunity as the lessor to ascertain and guard against the actual condition of the digester before accepting and using it, and subjecting the plaintiff's intestate to the consequent danger. Indeed, the plaintiff recovered her judgment against the lessee for this same injury upon that very ground, that the lessee by reasonable effort could have done, and yet did not.

It is not questioned that under such circumstances the lessor owes no more or other duty to the lessee's servants or assigns, than he does to the lessee himself. If his duty or freedom from duty to the lessee is made plain, his duty or freedom from duty to the lessee's servant is equally plain. The discussion, therefore, may be confined to the duty of the lessor to the lessee.

Under such circumstances as have been disclosed and stated in this case, does the owner of property, unaffected by any public use, owe to his prospective lessee the duty to actively exert ordinary care at the time of the lease to find out and 'apprise him of unknown defects which the lessee can equally well find out for himself?

The development of the law has not yet progressed so far in this State. Here the common law rule of caveat emptor is still in force, and is applied to the lease as well as to the sale of property. It was early said in *Hill* v. *Woodman*, 14 Maine, 38, (42, 43) that, in the absence of express stipulations as to the condition of the premises, the lessee took them for better or worse, at least when he had sufficient means for ascertaining their condition. In *Libbey* v. *Tolford*, 48 Maine, 316, it was explicitly declared to be the law that there is no implied obligation upon the lessor,—to see that a leased building is safe, well built or fit for any particular use,—that a leased house is reasonably fit for habitation,—or that leased land is fit for the purpose for which it is taken. In *Gregor* v. *Cady*, 82 Maine, 131, the owner was held bound to effectually repair where he assumed and began to repair, but it was declared (p. 136) he was under no obligation to repair, and that "the tenant, on the principle of caveat emptor and in the absence of any fraud upon the part of the landlord, takes them [the leased premises] in the actual condition in which he finds them for better and for worse." In *McKenzie* v. *Cheetham*, 83 Maine, 543, the defendant had leased the second story of a dwelling-house with a defective landing for a stairway which was the only means of ingress and egress for the second story. The plaintiff had made a social call upon the tenant, and on leaving fell through the defective landing. The court held that the defendant owed no duty to the tenant or to his caller, the plaintiff, as to the defective landing upon the premises, even though the landing was essential to the reasonable use of the leased tenement. It was again iterated (pp. 548, 549) that "the law, in the absence of any fraud or concealment on the part of the lessor, leaves the lessee to the operation of the maxim caveat emptor and he takes the premises as he finds

them for better or worse"; and many authorities were cited. The court also necessarily decided that the lessor owed to no one on the premises under the lessee any more duty than he owed to the lessee himself.

So stands the law in this state to-day, well known and hitherto acted upon. Any desired change or extension of it should be asked of the legislature and not of the court.

The case of *Nugent* v. *B. C. & M. R. R.*, 80 Maine, 62, rightly understood, is no departure from the former decisions of this court. The defendant railroad company, the owner of the railroad, had not leased it to the Portland and Ogdensburg R. R. Company, the plaintiff's employer, nor had it in any way turned over the whole plant to the latter company. It had simply permitted the Portland and Ogdensburg Company to run through freight trains over a part of its tracks. It retained the possession and control of its tracks, station houses, platforms, etc. The plaintiff, a brakeman in the employ of the Portland and Ogdensburg Co., was injured in the line of his duty, through the defective construction of a station awning on the defendant's road. It was conceded that upon the above facts, the defendant company having control of the station house, awning, platform, etc., and inviting the plaintiff to pass and repass in the line of his duty as such brakeman, owed him the duty of so constructing and maintaining the awning as not to be dangerous to him. But after this arrangement with the plaintiff's employer, and while it was in force, and before the injury, the defendant company leased its entire road including stations to the Boston and Lowell Railroad Company, which latter company completely took over and operated the entire road, agreeing to assume all liability for injuries, etc.

The plaintiff was injured while the lessee was in possession under that lease. It was contended by the defendant company that such lease and transfer of possession freed it from what otherwise would have been its duty and liability to the plaintiff. The court held that they did not. That was the point of the decision.

The decision in the Nugent case, supra, is really based upon the proposition that the owner of a railroad, or other property affected

by a public use, with which the public have business relations, owes a duty to all persons who lawfully come upon the property, to make and keep the property safe for all such persons,—and cannot avoid that duty by merely leasing the property and retaining rents. That proposition as before stated does not include this case of property of a purely private nature, with which the public has no business relations.

It is true, as urged by the plaintiff, that the learned justice writing the opinion in the Nugent case also adduced as an additional support for the judgment the responsibility of a lessor in some cases for the condition of the demised premises, but this was not necessary for the decision and was not intended to be applied to a case like this. The same justice afterward wrote the opinion in *McKenzie* v. *Cheetham*, supra, re-affirming the doctrine of the earlier cases.

The plaintiff, however, advances another and distinct proposition,—that the weak digester was a nuisance, allowed to become and remain so by the owner prior to and at the time of the lease, and hence that the owner must answer as for a nuisance. This proposition cannot be assented to. Some things may be nuisances per se under all circumstances and as to all persons;—other things are nuisances only under certain circumstances and as to certain persons. A slaughter-house may be a nuisance as to the owner's neighbors but none at all as to his employees in the business. What may be a nuisance as to others may not be a nuisance as to one's lessee, and here we are dealing with lessee and lessor.

To constitute any particular thing a legal nuisance per se, (apart from statute nuisances) as between lessor and lessee and the servants of the lessee, the thing itself must work some unlawful peril to health or safety of person or property,—as defective cesspools, imperfect sewers and drains, walls and chimneys liable to fall, unguarded excavations, etc. A fixed, inert mass of metal upon a solid foundation upon one's own land like this digester, was not in itself dangerous to anyone. The employees of the lessee could have worked around and near it without any danger from it, to person or health, so long as it was let alone. The danger arose

only when the lessee, the employer, began to make use of the digester without first ascertaining its tensile strength and gauging the applied force accordingly. Indeed, the plaintiff has once alleged, and recovered judgment upon proof, that the misconduct of the lessee caused the peril and injury complained of. This is inconsistent with her present contention that the digester was a nuisance per se as to her intestate, the lessee's employee.

The question of what is a nuisance upon leased premises was considered at some length with citation of authorities in *Mc Carthy* v. *York County Savings Bank*, 74 Maine, 315. It was there held that a discharge pipe insufficient to vent the water flowing into a bowl from a faucet, so that the water overflowed the bowl and caused damage, was not a nuisance as to the tenant. See also *Brightman* v. *Bristol*, 65 Maine, 423; *Burbank* v. *Bethel Steam Mill Company*, 75 Maine, 373; and *Leavitt* v. *Bangor & Aroostook R. R. Co.*, 89 Maine, 509, though those were not cases between lessor and lessee.

We have hitherto confined our citation of authorities to the decisions in this state, thinking they sufficiently showed our law to be against the plaintiff's contentions. She has, however, cited cases from other states, of which one or two notably support her contentions. *Stenberg* v. *Wilcox*, 96 Tenn. 163, (34 L. R. A. 615) and *Hines* v. *Wilcox*, 96 Tenn. 148, (34 L. R. A. 824.) As to these cases, the learned editor of the L. R. A. series says they are a new departure in the law,—that they transfer to the landlord a duty which has heretofore rested upon the tenant, the duty of taking active care to find out unknown and unsuspected defects. As we have said above, we think it is for the legislature not the court to make this transfer of duty if thought desirable.

On the other hand many courts in late decisions adhere to the long established rule of caveat emptor. In *Jaffe* v. *Harteau*, 56 N. Y. 398, a boiler defective in construction exploded. In *Edwards* v. *N. Y. & H. R. R. R. Co.*, 98 N. Y. 249, a gallery defective in construction fell. In *Doyle* v. *Union Pacific Ry. Co.*, 147 U. S. 414, a house was too weak structurally to resist snow slides known to the lessor to be recurrent and dangerous. In

*Tuttle* v. *Gilbert Mfg. Co.*, 145 Mass. 169, a floor defective in construction fell. In *Bowe* v. *Hunking*, 135 Mass. 380, a stair-tread had been sawed. The lessor knew of the sawing but supposed the tread sufficient. In *Kern* v. *Myll*, 94 Mich. 477, a well had been used as a cess-pool and thus had become offensive. In *Burdick* v. *Cheadle*, 26 Ohio St. 393, (20 Am. Rep. 767,) fixtures put up by the lessor were structurally defective and fell. In *Wilson* v. *Treadwell*, 81 Cal. 58, a stairway was defective. In *Texas & Pacific R. R. Co.* v. *Mangum*, 68 Texas, 342, a defective platform fell. In *Fellows* v. *Gishubler*, 82 Wis. 639, an unsafe awning fell upon a guest. In *McConnell* v. *Lemley*, 94 La. Ann. (34 L. R. A. 609,) a defective gallery fell upon a guest. In *Johnson* v. *Tacoma Cedar Lumber Co.*, 3 Wash. 722, defective machinery in a mill gave way. In all these cases, it appearing that the lessor was unaware of the defects, it was held that he was not liable to the lessee or his servants for the injury occasioned by them.

*Motion and exceptions sustained.*