[Civ. No. 3751.   Third Appellate District.—May 7, 1929.]

ISABEL T. FARBER, Appellant, v. A. L. GREENBERG, Respondent.

Loewenthal, Lissner, Roth & Gunter for Appellant.

Biby & Biby and John E. Biby for Respondent.

PRESTON (H. L.), J., *pro tem.*—Plaintiff brought this action to recover damages from defendant for being evicted by governmental authority from an apartment house occupied by him under a written lease, executed by defendant's predecessor in ownership.

The complaint is in two causes of action. A general demurrer was interposed to each cause of action upon the ground that said complaint, and each cause of action therein set forth, did not state facts sufficient to constitute a cause of action against defendant. The trial court sustained the demurrer to both causes of action and refused to allow plaintiff to amend, and rendered judgment for defendant. From this judgment the plaintiff, Israel I. Farber, prosecutes this appeal upon the judgment-roll.

The first cause of action is based upon the following facts, which are set forth in the complaint: On July 5, 1919, one Isaac Burkhart was the owner of an apartment house situate in the city of Los Angeles, at 802–804–804½ and 806 Temple Street, consisting of six apartments and twelve single rooms, with a cottage in the rear. On the said fifth day of July, 1919, Isaac Burkhart leased and let said apartment house and cottage to Emerson Turner. Said lease is in writing and, after omitting the formal parts, signatures and acknowledgments, is as follows: "That said party of the first part (Isaac Burkhart) hereby leases and demises unto the said party of the second part (Emerson Turner) that certain apartment house situated . . . together with the appurtenances of the same, for the term of ten (10) years beginning the 1st day of August, 1919, and expiring on the 31st day of July, 1929. The rent to be paid during the term of this lease is the sum of fifty-five ($55.00) dollars per month, payable in advance on the first day of each and every month. It is understood and agreed by both parties that in consideration of the first two months' rent, the said party of the second part is to paint and paper or calcimine the entire upper part of building at 804½ Temple Street, and the entire outside front of building, also rear porch floors and stairways, using good material, and in a work-

manlike manner. It is also understood and agreed that
the party of the first part is to pay one-half of water bill
during the term of this lease, but party of second part is
to see that faucets and toilets are kept in good repair at all
times. It is also understood and agreed that the party
of the second part shall have entire control of said apartment
house and cottage in the rear during entire term of this
lease. It is further understood and agreed, that the party of
the first part is to complete in a reasonable time all new
work and repairs, in a satisfactory manner, so as to insure
occupancy of said apartment house when inside painting
is completed. In the event the premises are destroyed by
fire or the elements, the party of the second part will be
relieved from paying further rent, and this lease will be
considered terminated. Second party to keep house and
yard clean . . . ''

The said lessee, Emerson Turner, after the execution of
said lease, complied with all the terms, covenants and condi-
tions thereof and entered into possession of the leased premises
and continued in possession under said lease until August
30, 1921, at which time he sold and transferred all his right,
title and interest in and to said lease to Israel I. Farber,
the plaintiff and appellant herein. Appellant immediately
went into possession of said leased premises, and continued
in possession under and by virtue of said lease and assign-
ment until on or about March 1, 1926. On October 1, 1923,
said Isaac Burkhart, the lessor in said lease, sold the prop-
erty leased to A. L. Greenberg, the defendant and respond-
ent herein. The complaint, with reference to this purchase,
alleges: ''That thereafter, on or about the 1st day of
October, 1923, prior to the commencement of this action,
said Issaac Burkhart, lessor in said apartment house lease,
sold the property leased and demised, and more particu-
larly described in said apartment house lease, to A. L. Green-
berg, defendant herein, subordinated to said apartment house
lease, and said A. L. Greenberg purchased said property
subordinated to said apartment house lease, and with notice
of all its terms, covenants, conditions and stipulations, and
did assume the same; that since said transfer from Isaac
Burkhart to A. L. Greenberg, as aforesaid, said defendant
Greenberg has been, and is now, the owner of said premises
and all lessor's rights in said apartment house lease, and

subject to, and responsible for, the full performance of all of lessor's covenants, stipulations and conditions therein contained.''

During all the time that appellant was in possession of said premises he kept and performed all of the terms and conditions of said lease and was at no time in default.

On February 3, 1926, the following notice was posted on said leased premises, to wit:

"Department of Health
"City of Los Angeles
"Notice

"Be it known to all parties concerned, that the building located at and known as No. 802–804 and 806 West Temple Street, situated in the City of Los Angeles, State of California, is hereby declared unfit for human habitation by reason of ordinance 50282, and is hereby ordered vacated within ten days from date hereof.

"This order is issued in accordance with the provisions of section 70 of Ordinance 30619 (N. S.) of the City of Los Angeles.

"GEORGE PARRISH, M. D.
"Health Commissioner
"By ERNEST E. HUBER.

"Dated February 3, 1926.''

On or about said third day of February, 1926, the duly authorized agent of the government of the city of Los Angeles and of the United States of America ordered and required appellant to give up and quit possession of said leased premises for the reason that said premises were not fit for human habitation, and pursuant to the order, and by direction of said governmental authorities of the city of Los Angeles and the United States of America, said appellant was forced to and compelled, and did, on or about March 1, 1926, vacate said leased premises. Appellant has not had the possession, use or occupation of said premises since March 1, 1926, and pursuant to the order of said governmental authorities, said leased premises were, prior to the commencement of this action, destroyed and demolished.

Said complaint also contains this allegation:

"That at the time the said apartment house lease was made and executed, as aforesaid, the premises therein de-

mised were and continued to be from the date of the execution of said lease until on or about March 1st, 1926, and were on or about February 3, 1926, the day on which said notice which is attached hereto and marked Exhibit 'B,' was posted on said premises, unfit for human habitation, because of defects in the drainage, plumbing, ventilation and construction of the same, and specifically that because of said defects in the drainage, plumbing, ventilation and construction of said premises, said premises, and the whole thereof, did, on or about the date said lease was executed, as aforesaid, constitute and did continue to constitute from said date to on or about March 1st, 1926, and were on or about February 3, 1926, a rat harborage and a nuisance.

"That the ordinances referred to in said notice . . . entitled 'An ordinance providing sanitary regulations for the protection of the public health in the City of Los Angeles, and particularly to prevent the propagation and spread of bubonic plague through the medium of rats,' and Ordinance Number 30619 (New Series), entitled, 'An ordinance providing health, sanitary and quarantine regulations'; that each of said ordinances were duly enacted and ordained by the mayor and council of the City of Los Angeles, State of California . . . "

The complaint further alleges that by reason of the facts alleged, plaintiff has been deprived of the possession, use and occupation of said leased premises since March 1, 1926, without fault on his part and has sustained damages in the total sum of $10,250.00, etc.

Appellant makes this contention: "That section 1941 of the Civil Code reads into every contract made by a lessor, who has premises to demise which are expected to be occupied by human beings, the express warranty that such premises are at the time of their demise, in a condition fit to be used for that purpose." It must be remembered that defendant and respondent *did not execute the lease in question, but that he is the grantee of Isaac Burkhart, the original lessor*. However, for the purpose of the present discussion, we will assume that the allegations of the complaint are sufficient to bring respondent into the exact position of the original lessor.

The rule is well settled that at common law, in the absence of fraud, concealment or an express covenant in the

lease, there was no duty owing from the landlord to the tenant to make repairs, and consequently no liability was incurred by the landlord to the tenant arising from the defective condition of the leased premises. (*Priver* v. *Young,* 62 Cal. App. 405 [216 Pac. 966]; *Brewster* v. *De Fremery,* 33 Cal. 341; *Van Every* v. *Ogg,* 59 Cal. 565; *Sieber* v. *Blanc,* 76 Cal. 173 [18 Pac. 260]; *Wilson* v. *Treadwell,* 81 Cal. 58 [22 Pac. 304]; *Daley* v. *Quick,* 99 Cal. 181 [33 Pac. 859]; *Grazer* v. *Flanagan,* 35 Cal. App. 724 [170 Pac. 1076]; *Callahan* v. *Loughran,* 102 Cal. 476 [36 Pac. 835]; *Gately* v. *Campbell,* 124 Cal. 520 [57 Pac. 567]; *DeMotte* v. *Arkell,* 77 Cal. App. 610 [247 Pac. 254]; *Carty* v. *Blauth,* 169 Cal. 713 [147 Pac. 949]; 15 Cal. Jur. 704; *Smelser* v. *Deutsche etc. Kirche,* 88 Cal. App. 469 [263 Pac. 838]; *Nelson* v. *Myers,* 94 Cal. App. 66 [270 Pac. 719].)

In *Grazer* v. *Flanagan, supra,* the court said: "At common law a lessor is not liable to make repairs to a structure rented as a dwelling house unless by force of an express contract or covenant; the tenant takes the premises for better or worse, and cannot involve the landlord in expense for repairs without his consent."

In *Gately* v. *Campbell, supra,* the supreme court, in discussing a similar question, thus states the law: "The controlling question left in this case is whether or not the landlord, in the absence of fraud, concealment, or covenant in the lease, is liable to the tenant for an injury suffered by him during his occupancy by reason of the defective condition or faulty construction of the leased premises. At the common law the lessor is not liable for such injury. (*Keates* v. *Earl of Cadogan,* 10 Com. B. 591; *Howard* v. *Doolittle,* 3 Duer [10 N. Y. Super. Ct.], 464; Taylor on Landlord and Tenant, secs. 175a, 382.) And this court has often laid down the same rule. (*Brewster* v. *De Fremery,* 33 Cal. 341; *Van Every* v. *Ogg,* 59 Cal. 565; *Sieber* v. *Blanc,* 76 Cal. 173 [18 Pac. 260]; *Wilson* v. *Treadwell,* 81 Cal. 58 [22 Pac. 304]; *Daley* v. *Quick,* 99 Cal. 181 [33 Pac. 859].)"

*Robinson* v. *Leighton,* 122 Me. 309 [30 A. L. R. 1386, 119 Atl. 809], was a case involving liability between landlord and tenant, and the rule is similarly stated as follows: "A rule similar to that of *caveat emptor* applying, it certainly may be defined as a general proposition applicable to

premises actually let, that the lessor, in his relation to the lessee, does not warrant their condition, and that he is not liable for any injury suffered by the tenant during his occupancy by reason of defects. There must be proof of exceptional circumstances to make the landlord liable in such cases; some proof of fraud or misrepresentation, or direct concealment of a fact known to the lessor, which the lessee did not have any reasonable opportunity of discovering. There must be proof of some direct omission by the lessor, in order to make the landlord liable. (*Libbey* v. *Tolford,* 48 Me. 316 [77 Am. Dec. 229]; *McKenzie* v. *Cheetham,* 83 Me. 543 [22 Atl. 469]; *Whitmore* v. *Orono P. & P. Co.,* 91 Me. 297 [64 Am. St. Rep. 229, 40 L. R. A. 377, 39 Atl. 1032]; *Bennett* v. *Sullivan,* 100 Me. 118 [60 Atl. 886, 18 Am. Neg. Rep. 108]; *Hill* v. *Day,* 108 Me. 467 [Ann. Cas. 1913C, 971, 81 Atl. 581].)''

In the case at bar no fraud or concealment is alleged; neither is there any express covenant in the lease that the lessor should place the leased premises in a fit condition to be occupied by human beings, or that the lessor should make or keep the premises in repair. Therefore, the right of appellant to any relief in damages against the lessor, by reason of the defective condition of the leased premises at the time the lease was executed, or at the time of the eviction, is purely statutory and such right must be measured solely by the provisions of the statute. (15 Cal. Jur., p. 704, and authorities above cited.)

Section 1941 of the Civil Code provides that the lessor of a building intended for the occupation of human beings must, in the absence of an agreement to the contrary, put it in a condition fit for such occupation, and repair all subsequent dilapidations thereof which render it uninhabitable. Section 1942 of the same code gives the option to the tenant, after notice to the landlord, to make repairs not requiring an expenditure of more than one month's rent, the same to be deducted from the rent, or to vacate the premises and be discharged from performance of the conditions of the lease.

In the absence of an express contract relating to repairs, sections 1941 and 1942 control; and in such case it is held that the statutory liability of the lessor declared in section 1941 is limited by the provisions of section 1942, so that

for failure to repair, the lessee has either one of two remedies, viz.: (a) Treat the failure to repair as a breach of the lease and vacate the premises; (b) Himself make the repairs at the expense of the landlord, after notice to him, provided they do not entail an expenditure of more than one month's rent. (*Van Every* v. *Ogg, supra; Grazer* v. *Flanagan, supra; Priver* v. *Young, supra; Gately* v. *Campbell, supra.*)

■ Therefore, in the case at bar it seems clear that no warranty exists, either express or implied, requiring the landlord to put the premises in a fit condition for human habitation, or repair subsequent delapidations which make the premises unfit for human habitation; and the lease containing no express covenant relating to repairs, and no fraud or concealment by the lessor being alleged, the complaint fails to state a cause of action.

■ For a second and distinct cause of action plaintiff, after repeating all of the allegations of the first cause of action, alleges:

"That at the time said apartment house lease was executed, lessor therein expressly warranted to lessee that said premises, and the whole thereof, would be so improved and repaired as to insure to said lessee the occupancy of said premises and the whole thereof, from the beginning of the term of said apartment house lease to the end of the term thereof. That said express warranty is incorporated in said apartment house lease and is in words and figures as follows, to-wit: 'It is further understood and agreed that the party of the first part (lessor) is to complete, in a reasonable time, all new and repairs in a satisfactory manner so as to insure the occupancy of said apartment house when inside painting is completed.'"

From this allegation appellant relies upon what he terms "expressed warranty contained in the lease itself." It is apparent that the language relied upon in the lease, and set forth in the complaint, relates to an agreement on the part of the original lessor to do certain things by the time the lessee had completed the inside painting, to the end that the lessee would not be delayed in taking actual possession, beyond the time required for him to do the inside painting. No claim is made that the respondent, or even the original lessor, breached this agreement.

We have already seen that there is no express or implied covenant in the lease imposing any obligation upon the lessor to make the demised premises fit for human occupancy; therefore, the second alleged cause of action is wholly insufficient.

It is also clear that neither of the alleged causes of action set forth in the complaint states a cause of action under sections 1941 and 1942 of the Civil Code, because there is no allegation in the complaint that *any notice to repair was ever given by appellant, or the original tenant, to respondent or to the original lessor.* Such notice must be given before a tenant can enforce the remedies provided by said sections 1941 and 1942. (*Raynor* v. *Drew,* 72 Cal. 307 [13 Pac. 866]; *Sieber* v. *Blanc, supra; Green* v. *Redding,* 92 Cal. 548 [28 Pac. 599].)

Furthermore, had the giving of notice been alleged, still the complaint would not state a cause of action based on said sections of the Civil Code, for the reason it is not alleged that any repairs were actually made or money expended in putting the premises in inhabitable condition, nor does appellant ask reimbursement for any money expended.

The whole theory of appellant's complaint is based on the contention that he was ousted from possession of the leased premises through *a breach of duty imposed upon respondent.*

The respondent makes this contention: "The complaint does not state a cause of action *against respondent* for the further reason that it appears therefrom that the breach relied upon by appellant occurred more than four years *before respondent* became the owner of the property."

We think this contention must be sustained. There is no express covenant in the lease to be performed by the lessor relating to any repairs, or imposing any obligation upon him to make the premises fit for human habitation, except the one above mentioned and that covenant shows upon its face that it was to be performed at once; but if we assume there was such a covenant by the original lessor, and such covenant was one running with the land, still, *no obligation for the breach thereof was imposed upon respondent because the breach alleged occurred long before respondent acquired any estate in the demised property.*

Section 1466 of the Civil Code provides: "No one, merely by reason of having acquired an estate subject to a cove-

nant running with the land, is liable for a breach of the covenant before he acquired the estate, or after he has parted with it or ceased to enjoy its benefits.'' (*Gardner* v. *Samuels,* 116 Cal. 84 [58 Am. St. Rep. 135, 47 Pac. 935]; *Bailey* v. *Richardson,* 66 Cal. 416 [5 Pac. 910]; *Handleman* v. *Pickerill,* 84 Cal. App. 218 [257 Pac. 890].)

█ Furthermore, the law is also well settled that, in the absence of fresh contractual stipulations, there is no privity of contract between the assignee of the lessee and the landlord. (*Bonetti* v. *Treat,* 91 Cal. 223 [14 L. R. A. 151, 27 Pac. 612]; 15 Cal. Jur., p. 753; *Realty & Rebuilding Co.* v. *Rea,* 184 Cal. 569 [194 Pac. 1024].) No such stipulations are alleged in the complaint. Therefore, under the allegations of the complaint in this case, there could be no privity of contract between appellant, who is the assignee of the lessee, and respondent, who is the grantee of the lessor. Privity of estate only exists between them, and this relation alone would impose no duty upon respondent to repair the leased premises for appellant.

It follows from what has been said that we are of the opinion that neither count of the complaint states a cause of action against respondent.

█ Appellant also complains that the trial court abused its discretion in denying him the right to amend. The record does not show in what manner appellant desired to amend—what changes or additions he proposed to make to his complaint. There is nothing in the record to indicate that he specified in the trial court the nature of the proposed amendment or amendments. Under these circumstances, we cannot say that the court below abused its discretion in denying leave to amend. (*Kleinclaus* v. *Dutard,* 147 Cal. 252 [81 Pac. 516]; *Dukes* v. *Kellogg,* 127 Cal. 563 [60 Pac. 44]; *Burling* v. *Newlands,* 112 Cal. 476 [44 Pac. 810]; *Hansen* v. *Carr,* 73 Cal. App. 518 [238 Pac. 1048]; *Lapique* v. *Walsh,* 50 Cal. App. 86 [195 Pac. 296].) Indeed, we are unable to perceive, if the facts alleged in the complaint be true, how appellant could amend his complaint to state a cause of action against respondent.

We think the judgment should be affirmed, and it is so ordered.

Finch, P. J., and Plummer, J., concurred.