[Civ. No. 10711.  First Appellate District, Division Two.—August 24, 1938.]

PHYLLIS FREUND, a Minor, etc., Respondent, v. OAK-LAND BOARD OF EDUCATION et al., Appellants.

Earl Warren, District Attorney, Applebaum & Mitchell, Charles V. Barfield and John H. Finger for Appellants.

Elliott Johnson and D. W. Brobst for Respondent.

STURTEVANT, J.—Phyllis Freund, a minor, by her guardian *ad litem,* commenced this action to recover damages for injuries sustained when struck by a locker which toppled over in the gymnasium building on the school grounds.

The complaint alleged in substance that the plaintiff was a student at Claremont Junior High School, Oakland; that a locker room was maintained for the convenience of the students; that certain steel lockers in that room were in a dangerous and defective condition in that they were not fastened to prevent their falling; that on information and belief such condition had existed for at least thirty days and that the defendants had notice of such dangerous condition. It is then alleged that as a result of such negligent maintenance one of the aforesaid lockers fell on the plaintiff inflicting the injuries complained of.

The defendants named in the complaint were the Oakland Board of Education, Oakland High School District of Alameda County, Oakland Junior High School District of Alameda County, and H. N. Massey. All but Oakland Junior High School District of Alameda County answered. The jury returned a verdict against all defendants. The brief recites that the Board of Education appealed. We will accept that recital and hereinafter refer to it as the defendant.

The accident occurred on March 1, 1937, between the hours of 9 A. M. and 10 A. M. at the Claremont Junior High School. It happened in an outbuilding which is used as a locker room and a dressing room by girls in classes in physical education, and as a gymnasium in rainy weather. It is also used for dancing. The room, on three sides, had lockers fastened to the walls, the outside dimensions of each locker being 7 feet by 12 inches by 12 inches, each locker containing two separate compartments, an upper and a lower, each compartment being 36 inches high. The lockers were attached together in groups of from three to six, four sets in the group that fell, i. e., eight separate compartments. They stood upright against the wall, and, in the manner stated above, were nailed at the backs to the studding in the wall, although they would stand without being attached to the wall. They had been installed in the building in August, 1931. There is testimony that, after the accident, the other lockers were loose but did not fall when pulled on. The principal testified that

at no time had any of the teachers or students brought to his attention the fact that any lockers were loose until after the accident. There is evidence that none of the lockers had pulled out before, and the plaintiff testified that prior to the time of the accident she had never noticed anything loose about the lockers. Photographs showing the interior of the room were introduced in evidence. An examination of them discloses that the walls consisted of studs apparently two inches by four inches placed upright. The studs are three and a half feet apart. On the outside the walls consisted of planking nailed on the studs horizontally. There is no inside lining. The locker cases vary in width. They rest on the floor and stand against the studs. The floor is level and in good condition. Depending on their width, some lockers may abut no stud, some may abut one stud, some may abut more than one stud. As to the locker that fell, the evidence does not disclose whether it abutted one stud or more. The backs of the lockers were tin and some of the lockers were nailed to the studs by driving nails through the back of the locker into a stud. On each locker was a handle. On the handles the students hung their garments and withdrew them. Chains were used to lock the lockers, that is, a chain was fastened on one side and was so drawn through the handles of the lockers as to keep several lockers closed. Whether the chain on the particular locker which fell was unduly pulled on is not disclosed in the evidence. After the accident an examination disclosed all nails in the locker which fell had been pulled. The evidence shows an eight penny nail was found after the accident but it does not show that it had been pulled out of the back of the locker that fell.

The lockers had been "inspected" by the janitor twice a year, during the summer and Christmas vacations. But how they were "inspected" no witness testified. There was no evidence that at any time before the accident any test was made to ascertain the results of six years of use. There was no evidence that the lockers were installed by a competent contractor nor that the mode of installation which we have delineated above is reasonably proper construction. With the doors of the lockers standing open it is clear one merely walking by the lockers can see all of the elements of strength

and weakness and the mode of installation hereinabove set forth.

On the morning in question the class, fifty to eighty in number, followed its usual procedure. The girls came in from the yard about ten minutes before the close of the period, took about seven minutes to dress, and then had three minutes in which to ''clean up'' before the period was up. After the girls were dressed they sat on benches about two feet in front of the lockers, and when all were seated, they were excused by the teachers for the next class. Shortly before the warning bell rang, certain lockers fell against the plaintiff who was seated with her back to the lockers. The plaintiff testified all the girls in the class but one were seated at the time, although testimony of other girls in the class showed many of the girls were wandering around trying to get their clothes put away and finish dressing. One witness testified that one girl was standing on the bench on which the plaintiff was seated and jumped off just before the accident. Other girls, seated on the same bench as the plaintiff, jumped out of the way of the falling lockers.

The defendant's first point is that, as owner of the property, it is not responsible for injury to a pupil caused by latent defects in the property of the school district of which defects it had no notice, actual or constructive. It cites many authorities. The plaintiff replies that the case presents a question of patent defects and not latent defects. We think that contention is supported by the record.

The defendant next contends that the plaintiff was bound to plead such facts as would bring her case within the provisions of the Public Liability Act of 1923 (Stats. 1923, p. 675, Deering's Gen. Laws, Act 5619), and not under the provisions of section 2.801 of the California School Code. The plaintiff claims she was entitled to and did so frame her complaint as to bring her case within the provisions of both statutes. Continuing she asserts that the case was tried in the trial court upon the theory that the school district and its employees failed to exercise ordinary care in the maintenance of the steel lockers that fell upon the plaintiff and that by the exercise of ordinary care a reasonably prudent person would have discovered the dangerous condition of the lockers and the peril of their falling. She cites and relies on *Bellman, Minor,* v. *San Francisco High School Dist.,* 11 Cal.

(2d) 576 [81 Pac. (2d) 894], *Spore* v. *Washington*, 96 Cal. App. 345 [274 Pac. 407], *Ahern* v. *Livermore Union High School Dist.*, 208 Cal. 770 [284 Pac. 1105], *Damgaard* v. *Oakland High School Dist.*, 212 Cal. 316 [298 Pac. 983], and *Maede* v. *Oakland High School Dist.*, 212 Cal. 419 [298 Pac. 987]. The defendant replies that no one of said actions was similar to the instant case in its facts and that all of them were based on section 2.801 of the School Code. Continuing it asserts that as to its liability under Act 5619, *supra,* the plaintiff wholly failed to prove a case and that the trial court committed prejudicial error in refusing to give its requested instructions applying said statute to the instant case. The plaintiff concedes that if said statute is applicable then such errors were committed. But she insists that under the provisions of said section 2.801 she was entitled to and did plead general negligence, to wit, that the defendants did negligently maintain said lockers, etc. To that claim the defendant answers; that there was no proof of such general negligence; that no witness testified said lockers were ever seen loose; that even the plaintiff testified she had never seen them in that condition, and that they were carefully inspected twice each year and were inspected the last time about sixty days before the accident. The defendant then argues that as for latent defects it may not be said such inspection was negligent (*Baddeley* v. *Shea,* 114 Cal. 1 [45 Pac. 990, 55 Am. St. Rep. 56, 33 L. R. A. 747]; *Micek* v. *Weaver-Jackson Co.,* 12 Cal. App. (2d) 19, 21 [54 Pac. (2d) 768]), and there is no evidence the defects were patent.

The foregoing exhausts the reasoning and arguments of counsel. If the plaintiff were in fact a tenant and suing her landlord, it might be argued that she had no standing. (*Daley* v. *Quick,* 99 Cal. 179 [33 Pac. 859].) However, she was not a tenant. She was a child fifteen years of age. Under the law of this state she was compelled to go to school. Under the law of this state she was compelled to go to the identical school she was attending. Under the law of this state she was compelled to go into the particular room where the accident occurred. She went in there and was seated on a bench. While so seated a part of the fixtures of the building tumbled onto her causing the injury for which she asks damages. In the trial court the jury heard the evidence and brought in a verdict in favor of the plaintiff. On the de-

fendant's appeal we are asked, in effect, to hold that the plaintiff has shown no actionable wrong. We think she has *prima facie* shown an actionable wrong. That conclusion is supported by a well-defined rule. In *Judson* v. *Giant Powder Co.,* 107 Cal. 549, at page 556 [40 Pac. 1020, 48 Am. St. Rep. 1021, 29 L. R. A. 718], the court quoted with approval: "When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care." In the instant case there was no satisfactory explanation by the defendant and therefore the judgment must stand. (*Haun* v. *Tally,* 40 Cal. App. 585 [181 Pac. 81].)

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 23, 1938, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 20, 1938.