[Civ. No. 12390.   First Dist., Div. One.   Aug. 27, 1943.]

LEE SHOTWELL et al., Plaintiffs and Appellants, v. V. J. BLOOM et al., Defendants and Appellants.

Jordan L. Martinelli and Samuel W. Gardiner for Plaintiffs and Appellants.

George H. Harlan for Defendants and Appellants.

PETERS, P. J.—Mr. and Mrs. Shotwell brought this action against the Blooms and others to recover for the value of

their personal effects which were burned up in a fire that destroyed the premises in which they were living, and which were owned by the Blooms. The Blooms cross-complained asking for $10,000 damages for the loss of the house, alleging that the fire was caused by the negligence of the Shotwells. The jury rendered a verdict of $850 in favor of the Shotwells, and against the Blooms. The Blooms appeal from the judgment entered on that verdict. The Shotwells appeal from an order of the trial court striking their cost bill from the files.

The facts are as follows: In October of 1941 the Blooms, who owned a farm in Marin County, leased it to a partnership known as Roberts Dairy. On the property was a house which had, prior to 1925, been the family residence of the Blooms. Between 1925 and October of 1941 the property, including the house, had been leased to successive tenants. When the property was leased by Roberts Dairy, the Blooms knew that the dairy intended to use the house on the premises for the purpose of housing an employee of the dairy and his family. In November of 1941 the Shotwells were hired by the dairy to look after and operate the premises, the employment to commence in December of 1941. Mr. Shotwell was to receive a salary, plus use of the house in question, and food as his compensation. The Shotwells were living in Oregon in November of 1941 when their contract with the dairy was entered into. On December 1, 1941, they arrived at Roberts Dairy. They were traveling by automobile and had two trailers containing their household furniture and effects. It was a rainy day and their furniture and other effects were very damp. Mr. Turney, one of the partners of the dairy, told the Shotwells to go out to the farm and to take possession of the house. They drove out to the house and moved in their furniture during the afternoon of that day. The day was gloomy and the electricity had not been turned on. The only way to heat the house was by a kitchen stove and two fireplaces, one of which was located in the living room. The Shotwells started fires in the two fireplaces late in the afternoon, and these fires were kept lighted until they retired some time before 10 p.m. The fires were put out before they retired. Shortly thereafter a fire occurred which resulted in the house burning down and a considerable portion of the furniture of the Shotwells being destroyed. There is no serious dispute but that the fire started in the partition be-

hind the fireplace in the living room. At the trial it was the theory of the Shotwells that there was a crack and loose bricks in the back of the fireplace; that the Blooms knew of the existence of these defects; that these were latent defects; that the Blooms failed to notify Roberts Dairy, or them, of the existence of these latent defects, and that the fire was proximately caused by these defects.

The first amended complaint is in two counts. It names the Blooms, Roberts Dairy and its partners as joint defendants. The first count alleged a renting of the house to the Shotwells by the Blooms and the dairy jointly; that the house was in a dangerous and defective condition in that the only method of heating the house was by means of a fireplace which had a dangerous and defective flue; that defendants knew of this defect and the Shotwells did not; and that defendants failed to warn the Shotwells of this known defect. It will be noted that in this count there is no allegation of fraud or concealment.

The second count, in general, repeated the allegations of the first with the following differences: The allegations concerning the renting by the dairy and the knowledge of its partners were dropped. This count alleged that the Blooms had leased the property to the dairy, and that the Shotwells were the employees of the dairy; that the Blooms were guilty of fraud and concealment with respect to the defects in the fireplace; that this fraud was against both the Blooms and the dairy. The Blooms' demurrer to this complaint was overruled. Early in the trial, on motion of the Shotwells, the dairy and its partners were dismissed as defendants.

On this appeal the Blooms make three main contentions: (1) The demurrer to the complaint was improperly overruled; (2) the facts do not support the judgment, and (3) their motion for a new trial should have been granted.

In support of their contention that their demurrer should have been sustained, the Blooms contend that the cause of action contained in the first count is based upon neglect of the duty to repair by the Blooms and the dairy, whereas the second count is based upon the alleged fraud of the Blooms alone. They therefore contend that the causes of action alleged in the complaint did not arise out of the same tort, did not affect all the parties to the action, and that there was an improper joinder of parties and causes of action. These contentions are without merit. There was

no improper joinder of either parties defendant or of causes of action.

So far as the parties are concerned, the Shotwells first alleged that both sets of defendants knew of the dangerous condition, and that both sets of defendants failed to warn them of the latent defect. The second count was based on the theory that the Blooms were guilty of a fraud both on the tenant and on them as employees of the defendant in failing to warn either the tenant or them of the hidden defect. The rules on joinder of parties defendant, since the 1927 amendments to the Code of Civil Procedure, have been greatly broadened over those theretofore existing. Section 379 now provides that any person may be joined as a defendant "who is a necessary party to a complete determination or settlement of the question involved." Until the Shotwells knew whether Roberts Dairy had been warned of the defects, the presence of that defendant was indispensable to a settlement of the controversy. Section 379a permits the joinder of all defendants "against whom the right to any relief is alleged to exist, whether jointly, severally or in the alternative." Section 379b provides that "It shall not be necessary that each defendant shall be interested as to all relief prayed for, or as to every cause of action included in any proceeding against him," while §379c provides that "Where the plaintiff is in doubt as to the person from whom he is entitled to redress, he may join two or more defendants, with the intent that the question as to which, if any, of the defendants is liable, and to what extent, may be determined between the parties." The present case falls within several of these sections. The two sets of defendants were, therefore, properly joined.

So far as the joinder of causes of action is concerned, subd. 8 of § 427 of the Code of Civil Procedure permits the joinder of causes of action where they all arise out of "Claims arising out of the same transaction, or transactions connected with the same subject of action." The present case falls squarely within the letter and spirit of that subdivision. Moreover, it has been held that the liberal amended statutes on joinder of parties referred to above enlarged the old rules of joinder of causes of action, so that causes now may be joined when they meet the tests of the sections on joinder of parties, and that all such causes do not have to affect all parties to the action. (*Joerger* v. *Pacific Gas &*

*Electric Co.*, 207 Cal. 8 [276 P. 1017] ; *Teeter* v. *City of Los Angeles,* 209 Cal. 685 [290 P. 11] ; *Peters* v. *Bigelow,* 137 Cal. App. 135 [30 P.2d 450] ; *Kane* v. *Mendenhall,* 5 Cal.2d 749 [56 P.2d 498] ; see, also, 23 Cal.L.Rev. 325 ; 7 So.Cal.L.Rev. 469.)

◼ The Blooms also contend that the second cause of action, upon which the Shotwells relied at the trial, is predicated on fraud, and urge that the facts constituting the alleged fraud were not properly pleaded. It is obvious that the Shotwells did not plead nor rely upon any active fraud of the Blooms, except insofar as the failure to warn of the known defects constituted a fraud upon the tenant or his invitees. The theory of the complaint was that the Blooms had actual knowledge of the defects in the fireplace; that they failed to warn their lessee, the Roberts Dairy, or the employees of the lessee; that this amounted to a concealment of the defects. The indispensable elements of the cause of action forming the basis of the complaint were properly alleged.

The main contentions of the Blooms are that the trial court did not properly instruct the jury on the law applicable to the liability of a landlord to the employees of the tenant for injuries caused by hidden defects; that even if the instructions were correct the evidence does not show that they had actual knowledge of the defects; and that the defects, if any, were patent and not latent.

◼ The law applicable to the problem here presented is reasonably well settled. The general rule is that the landlord is not liable for injuries to the person or property of the tenant or his invitees caused by defects in the leased premises. This general rule of non-liability is an application of the doctrine of *caveat emptor.* In general, the lessee takes the premises as they are. There is no duty on the landlord to inspect with the object of locating latent defects nor to repair patent defects. (*Ellis* v. *McNeese,* 109 Cal.App. 667 [293 P. 854] ; *Nelson* v. *Myers,* 94 Cal.App. 66 [270 P. 719] ; 1 Tiffany, Landlord and Tenant, p. 556, § 86, sub. (a) ; see cases collected 15 Cal.Jur. p. 704, § 114; 7 Cal.Jur.Supp. p. 440, § 114; 32 Am.Jur. p. 526, § 662.)

◼ To this general rule there is a well settled exception. This exception, supported by cases from many states, is stated in 1 Tiffany, Landlord and Tenant, p. 562, § 86, subd. d, as follows: "The rule above stated, that the lessor is under no

obligation to the lessee as regards the condition of the premises at the time of the demise, is subject to an exception to the effect that, if there is some hidden defect in the premises, or danger thereon, which is known to the lessor at the time of making the lease, but which is not apparent to the intending lessee, the lessor is bound to inform the latter thereof, and failing so to do, he is liable for injuries to the tenant arising therefrom.'' This is the rule announced by the Restatement of Law of Torts, vol. 2, p. 969, § 358, and has been frequently declared in this state. (*Stanley* v. *Lander,* 3 Cal.App. 2d 284 [39 P. 2d 225]; *Hassell* v. *Denning,* 84 Cal.App. 479 [258 P. 426]; *Ellis* v. *McNeese,* 109 Cal. App. 667 [293 P. 854]; *Ayres* v. *Wright,* 103 Cal. App. 610 [284 P. 1077]; *Nelson* v. *Myers,* 94 Cal.App. 66 [270 P. 719]; see cases cited 15 Cal.Jur. p. 705, § 115; 7 Cal.Jur.Supp. p. 442, § 115.)

The exception above mentioned applies not only in favor of the tenant but also in favor of those who enter in the right of the tenant, that is, in favor of members of the tenant's family (*Moore* v. *Parker,* 63 Kan. 52 [64 P. 975, 53 L.R.A. 778]; *Coke* v. *Gutkese,* 80 Ky. 598 [44 Am.Rep. 499]; *Davis* v. *Smith,* 26 R.I. 129 [58 A. 630, 106 Am.St.Rep. 691, 66 L.R.A. 478]; *Cutter* v. *Hamlen,* 147 Mass. 471 [18 N.E. 397, 1 L.R.A. 429]); his employees (*Godley* v. *Hagerty,* 20 Pa. 387 [59 Am.Dec. 731]; *Anderson* v. *Hayes,* 101 Wis. 538 [77 N.W. 891, 70 Am.St.Rep. 930]); sub-tenants (*Guenther* v. *Jackson,* 73 Ind.App. 162 [126 N.E. 873]); or other invitee (*Christadoro* v. *Von Behren's Heirs,* 119 La. 1025 [44 So. 852, 17 L.R.A.N.S. 1161]; *Van Avery* v. *Platte Valley Land & Investment Co.,* 133 Neb. 314 [275 N.W. 288]). As to such invitees of the tenant (except as to the lease of public or semi-public buildings), the landlord is liable to the same extent as he would have been had the tenant been injured. Stated another way, the landlord's liability, except in the case of public and semi-public buildings where his liability is greater (see *King* v. *New Masonic Temple Assn.,* 51 Cal.App. 2d 512 [125 P.2d 559]), is no greater to the invitee of the tenant than it would be to the tenant himself. (1 Tiffany, Landlord and Tenant, p. 649, § 96, subs. (a) and (b); see cases collected 110 A.L.R. p. 749; 15 Cal.Jur. p. 742, § 155; 32 Am.Jur. p. 529, § 665, p. 538, § 671; 84 U.ofPa.L.Rev. 473.) This is also the rule of the Restatement of the Law of Torts (vol. 2, p. 969, § 358.) In *Runyon* v. *City of Los Angeles,* 40

Cal.App. 383, 392 [180 P. 837], the court stated that ''one who, upon the express or implied invitation of the tenant, enters or is proceeding to enter upon the leased premises, is an invitee, and as such stands in the shoes of the tenant'' and may recover against the landlord only if the tenant could recover. (See, also, *Angevine* v. *Knox-Goodrich*, 3 Cal. Unrep. 648 [31 P. 529].)

■ Under this rule the landlord (except in the case of the leasing of public or semi-public buildings) discharges his full liability if he informs his tenant of the defect. If the tenant fails to inform his invitee of such known defect the tenant and not the landlord is liable. Tiffany says of this proposition: ''The lessee's knowledge is in effect imputed to the person injured, or rather, perhaps, it is the lessee's duty, not the lessor's, to inform persons, entering on the premises by the former's invitation or permission, of the dangerous condition. A different rule, requiring the lessor to give such information to every person whom the lessee may allow upon the premises, would impose on the lessor the duties of an occupant while divested of the benefits, and would in effect prevent the leasing of any premises in which there is a concealed source of danger to persons who might enter thereon.'' (1 Tiffany, Landlord and Tenant, §96 (b) at p. 653.)

The trial court fully instructed the jury in exact accordance with the rules above stated. There was no error in these instructions.

■ It is next contended that the evidence does not support the implied findings of the jury that the fire was caused by latent defects of which the Blooms had actual knowledge. It is admitted that the Blooms did not warn the Roberts Dairy or the Shotwells of the existence of the defects in the chimney, and the uncontradicted evidence is that neither the tenant nor the Shotwells discovered the defects, but it is contended that there is no legally sufficient evidence to show that the Blooms had knowledge of the defects, if any in fact existed.

The evidence shows that there were loose bricks in the back of the fireplace and that there was a crack in the back of the fireplace extending diagonally from one corner near the floor of the fireplace upwards into the chimney. A Mrs. Rothwell, who leased and lived in the house in question during the period 1926-1934, testified that she had considerable trouble with the fireplace while she lived there; that there

were loose bricks in the back of the fireplace that were constantly falling out and that there was a diagonal crack about half an inch wide across the back of the fireplace; that the crack was as deep as you could see; that as a result of these defects she discontinued the use of the fireplace during her tenancy. The son-in-law of Mrs. Rothwell, Thomas Greer, corroborated her statement as to the existence of the loose bricks and crack. Both of the Shotwells, as well as several other witnesses, testified that after the fire the crack could be clearly seen in the back of the fireplace. Mr. Shotwell made a detailed examination of the chimney and fireplace after the fire, and described the crack and the loose bricks. He testified that the crack penetrated the back of the fireplace and that you could see light through the crack. That the fire started as a result of the crack and loose bricks is a reasonable, if not inevitable, inference from the evidence. The evidence is overwhelming that the fire started in back of the fireplace and did not start from the roof. This was testified to not only by the Shotwells and Frank Lintz, who was living with the Shotwells on the day of the fire, but also by several firemen who unsuccessfully tried to put the fire out.

The only other question involved is whether the Blooms had actual knowledge of the existence of the defects in the fireplace. The Blooms categorically denied that they knew of the defects or that anyone had ever informed them of the defects. Mrs. Rothwell who, as already pointed out, leased the premises from the Blooms from 1926 to 1934, testified that some time during 1927 Mr. Bloom called at the house, and that while he was standing with her in front of the fireplace she told him that it was unsafe, and called his attention particularly to the loose bricks. Bloom replied she should be careful and not build too big a fire. Her husband unsuccessfully attempted to repair the defects, and, when Bloom failed to do so, she discontinued the use of the fireplace. Thomas Greer testified that some time in 1927 he and a hired man by the name of Kinney were cleaning the chimney when Mr. Bloom came into the yard; that Kinney told Bloom that the fireplace was dangerous because of the crack and the loose bricks, and that Bloom said "it couldn't be very bad." Thus, there was positive evidence that as early as 1927 Bloom had actual knowledge of the defects. Although Bloom denied these conversations, such conflicts were for the

jury. This testimony alone supports the implied finding that Mr. Bloom had actual knowledge of the defects.

It should also be mentioned that there is other evidence in the record which, while not as direct as that of Mrs. Rothwell and Greer, supports an inference that the Blooms were suspicious of the chimney and had knowledge that something was wrong. Both the Blooms testified that after the property was leased to Roberts Dairy in 1941, they visited the property and conducted a smoke test on the chimney in question, as well as on the chimney of another fireplace in the house; that they plugged the top of the chimney here involved and burned some burlap in the fireplace; that they looked in back of the fireplace but found no cracks or loose bricks, and no smoke coming out. They stated that they had no suspicions of the fireplace when they made this test, and had no special reason for making it. Mrs. Rothwell, the former tenant above mentioned, testified that Mr. Bloom called on her in June of 1942, after the fire, for the purpose of having her testify for him at the trial; that at that time she asked him about all the loose bricks in the back of the fireplace; that Bloom then stated to her that "he had warned everyone not to build too big a fire in the fireplace," and that he had had the fireplace repaired after the Rothwells left the premises. Bloom positively denied these conversations. His credibility was, of course, for the jury. Several witnesses testified that Bloom had stated to them that, had he known the Shotwells were going to move in, he would have warned them against building too big a fire. Bloom tried to explain this statement by contending that he was afraid that too big a fire would start a roof fire. The sufficiency and credibility of the explanation were, of course, for the jury. One witness testified that after the fire Bloom agreed that the fire started through the crack in the chimney. Another testified that after the fire he offered to show Bloom the crack in the chimney but that Bloom refused to accompany the witness to the chimney. From this brief summary, it is obvious that the implied finding of actual knowledge is amply supported.

██ It is next argued that the defects here found to exist were patent and not latent, and should have been discovered by the Shotwells or by Roberts Dairy. ██ It is clear that if the tenant or his invitee knows, or by the exercise of reasonable care should have known, of the defects that no liability attaches to the landlord even where the landlord has actual

knowledge of the defects causing the injury. The trial judge so instructed the jury in this case. In support of the verdict we must assume that the jury found that the Shotwells, by the exercise of due care, would not have discovered the defects. That implied finding can be upset only if, as a matter of law, it can be said that the Shotwells, in the exercise of reasonable care, should have discovered the defects. The defects here found to exist consisted of loose bricks and a crack in the back of the fireplace. The day was very dark, it was raining and the electricity had not been turned on. The back of the fireplace was covered with soot, and the fireplace itself was filled with rubbish. Certainly, it cannot be said that the Shotwells, as a matter of law, were required to make a careful inspection of the fireplace before using it. Whether they exercised due care and whether the defects were patent or latent were obviously questions for the jury. Its determination, under the facts, is conclusive.

The Blooms next urge that for several different reasons their motion for a new trial should have been granted. They first contend that there was no legally admissible evidence of the value of the property destroyed. The only witnesses as to the value of the destroyed furniture were the Shotwells, and it is urged that, although they were the owners of the property, they were not competent to testify as to value because they had just moved here from Oregon and, therefore, had no knowledge of the value of the property in Marin County. The contention is without merit. It goes to the weight, not to the admissibility, of the evidence. An owner is a qualified witness as to the value of property owned by him whether generally familiar with such values or not. (See cases collected 10 Cal.Jur. p. 1023, § 278.)

It is next urged that the motion should have been granted on the ground of surprise and newly discovered evidence. This contention is predicated upon the fact that the complaint alleges that the defects causing the fire were in the fireplace "flue," while the evidence showed they were in the back of the fireplace. It is contended that this constituted a fatal variance between the pleading and proof, and that it took the Blooms by surprise at the trial, and that, had they known that the defects charged were in the back of the fireplace and not in the flue, other witnesses would have been produced who would have testified that there were no cracks in the back of the fireplace. Affidavits of these pro-

posed witnesses were produced on the hearing of the motion. These contentions are without merit. In the first place, the Blooms were not taken by surprise late in the trial by this alleged change in theory, as contended by them. Counsel for the Shotwells in his opening statement clearly and unequivocally stated that he intended to prove that the fire started "through these openings in the fireplace itself." Mr. Bloom was called as the first witness and he was asked if he had any knowledge of cracks in the fireplace. He was also asked concerning an alleged conversation with Mrs. Rothwell and Greer concerning the crack and loose bricks in the back of the fireplace. Mrs. Rothwell was the third witness called, and Greer was the fourth. They testified in detail concerning the loose bricks and the crack in the back of the fireplace, and no objection was made to their testimony. No objection on the ground of variance was made to the other testimony in the record concerning the condition of the back of the fireplace. A reading of the record discloses that from the time of the opening statement to the end of the trial the Blooms knew that it was the theory of the Shotwells that the allegations of the complaint relating to the defective "flue" referred to loose bricks and the crack in the back of the fireplace. The evidence shows, and the jury impliedly found, that Mr. Bloom had knowledge of the condition as early as 1927. Under such circumstances there was no fatal variance, nor surprise, warranting the granting of a new trial. To say the least, the denial of the motion under these facts rested in the discretion of the trial court.

Objection is also made to several of the instructions. At the request of the Shotwells, instructions were given embodying the rules of law above set forth relating to the landlord's liability to the employees of his tenant for injuries caused by latent defects. These instructions were not only in accord with the proper rules of law already discussed, but were practically identical with several instructions given at the request of the Blooms. There was no error in any of the instructions. Other points of a minor nature are urged. They have been considered, and all found to be without merit.

From what has been said, there was no error in the judgment against the Blooms.

The Shotwells appeal from an order of the trial court striking their cost bill from the files. After the entry of judgment, the Shotwells filed a cost bill for $133. The Blooms

moved to strike the cost bill on the ground that the judgment for $850 was less than $1,000, which is the jurisdiction of the Class A justice's court located in the county in which the action was tried. Section 1032 of the Code of Civil Procedure provides in part as follows:

"In the superior court, except as otherwise expressly provided, costs are allowed of course:

"(a) To plaintiff upon a judgment in his favor: . . . in an action for the recovery of money or damages. . . .

"Provided, that the plaintiff shall not recover costs when the judgment is one which could have been rendered by a municipal or inferior court within the same county or city and county." Based on this section, the trial court struck the cost bill from the files. The Shotwells concede, as they must, that under the above section, so far as the judgment granted them $850, no costs could be recovered because the judgment was less than $1,000. But they urge that, since the judgment also denied the Blooms any relief on their cross-complaint for $10,000, the judgment actually rendered was not one "which could have been rendered" by a Class A justice's court. There seems to be no case directly in point although there is one case under old sections 1022 and 1024 of the Code of Civil Procedure relating to denial of costs in the superior court when the judgment was below $300, which seems to support the action of the trial court in the present case. (*Benson* v. *Braun,* 134 Cal. 41 [66 P. 1].) The case is not decisive, however, because of some differences in language between these old sections and the present section 1032 here involved.

The purpose of statutes such as section 1032 is clear. It is to force plaintiffs to bring their cases in the inferior courts wherever possible, and to penalize them if they do not do so. Here, without reference to the cross-complaint, the Shotwells brought their action in the wrong court and were subject to the penalty. It is hard to see why this defect was cured by the filing of the cross-complaint by the Blooms. The tendency of the courts has been to look only to the amount given in the judgment in determining whether, under section 1032, the successful party is entitled to costs. In other words, the courts have consistently applied the principle that costs are not recoverable if the actual recovery is less than the jurisdictional amount. (*Handy* v. *Samaha,* 117 Cal.App. 286 [3 P.2d 602]; *Shaw* v. *Imperial Mut. L. & B. Assn.,* 4 Cal.

App.2d 534 [41 P.2d 574].) Thus, in *Hollinger* v. *Medina*, 46 Cal.App.2d 542 [116 P.2d 166], it was held in an action in the superior court where the jury determined that the plaintiff was damaged to the extent of $10,000, but under the comparative negligence doctrine there applicable defendant was only responsible for one-tenth of the damage or $1,000, and judgment was rendered for that amount, that costs were not recoverable.

Of course, had the plaintiff not sued for more than $1,000, and had he filed his complaint in the inferior court, and then had the defendant cross-complained for $10,000, the case would have been transferred to the superior court. Had judgment then been rendered for plaintiff for $850, as was here done, it might be argued that plaintiff, not having invoked the superior court jurisdiction, would be entitled to costs. But that is not the situation here involved. Here, the plaintiff invoked the superior court jurisdiction. As it turned out, he received judgment for less than $1,000. No recovery at all was allowed on the cross-complaint. Had the issues presented by the complaint and answer been tried alone, no costs could be recovered by plaintiff, because the inferior court could have granted a judgment for $850. The inferior court could likewise have entered a judgment denying any relief on the cross-complaint. Under such circumstances, we believe the letter and spirit of the statute requires that costs be denied the Shotwells.

The appeal by the Blooms from the judgment is affirmed. The appeal by the Shotwells from the order of the trial court striking their cost bill is also affirmed.

Knight, J., and Ward, J., concurred.

A petition for a rehearing was denied September 25, 1943, and defendants and appellants' petition for a hearing by the Supreme Court was denied October 25, 1943.