Filed 6/20/16  Geyer v. Jemmeca, LLC CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JACK GEYER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JEMMECA, LLC et al.,<br><br>    Defendants and Respondents. | D068774<br><br><br>(Super. Ct. No. 37-2014-00013877-CU-PO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, John S. Meyer, Judge.  Reversed.

Scolinos, Sheldon & Nevell and Daniel G. Sheldon for Plaintiff and Appellant.

Bonnie R. Moss & Associates, Alice M. Segal and Jane M. Kelley for Defendants and Respondents.

Jack Geyer appeals from summary judgment entered in favor of defendants Jemmeca, LLC, the Registry Real Estate Group, Inc., and the estate of John R. Kline (collectively Jemmeca).  Geyer filed a lawsuit against the defendants after a dog that was

in the courtyard of an apartment complex owned and operated by Jemmeca bit off the tip of one of Geyer's fingers. The trial court concluded Jemmeca did not owe Geyer a duty of care as a matter of law because Jemmeca did not have actual knowledge that the dog was dangerous. On appeal, Geyer asserts the exception to the imposition of a duty of care relied on by the trial court does not apply here; we agree. Instead, we must analyze whether Jemmeca owed Geyer a duty of care under the factors set forth in *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*). In doing so, we conclude Jemmeca did owe Geyer a duty of care in this circumstance. Accordingly, the judgment is reversed.

FACTUAL AND PROCEDURAL BACKGROUND[1]

On May 5, 2012, around 9:30 p.m., Geyer was walking past Jemmeca's small apartment complex, which is located along a busy street in the Pacific Beach neighborhood of San Diego. At the time of the incident, the nine-unit complex was managed by Kline, who was part owner of Jemmeca, LLC and Registry Real Estate Group, Inc. and who resided in one of the apartments. The complex has a shared, gated courtyard surrounded by a short solid wall topped with a wrought iron fence with bars about four inches apart. The wall is five feet from the neighboring public sidewalk and, at the time of the incident, the area between the wall and the sidewalk was planted with flowers and other small vegetation.

As Geyer walked past the complex, in the courtyard he noticed a golden retriever that he had previously petted through the fence. Geyer stepped off the sidewalk and onto

---

[1] The facts, which are not in dispute, were garnered from the declarations, deposition excerpts and answers to interrogatories presented to the trial court.

the vegetation to pet the golden retriever's head, which was sticking through the fence. While Geyer was petting the retriever, another dog, a pit bull, ran toward the fence and stuck its head through the bars about three feet from where Geyer stood. Geyer reached to pet the second dog with his right hand and it immediately snapped, biting off the tip of Geyer's middle finger.

A year later Geyer filed a civil complaint against the pit bull's owner, Chris Coppedge (who is not a party to this appeal), and Jemmeca asserting four claims against all of the defendants: "[a]nimal with [v]icious [p]ropensities"; "[d]og [b]ite [s]tatute"; "[n]egligence; and" "[p]remises [l]iability." Jemmeca answered the complaint, and the parties engaged in discovery. Thereafter, Jemmeca filed a motion for summary judgment asserting that as Coppedge's landlord it had no duty or liability to Geyer for the injury he sustained as a result of Coppedge's dog biting Geyer. Geyer opposed the motion, arguing that because Kline lived on the property and actively maintained control of the courtyard where residents' dogs were permitted to stay unsupervised and unleashed, Jemmeca owed a duty of due care to passersby like himself.

Geyer pointed to the facts that the complex had a large sign in front stating that the apartments were pet friendly, that eight of the nine tenants in the complex had dogs and that upwards of 10 dogs were permitted to roam in the courtyard and were known to stick their heads through the gaps in the surrounding fence. In fact, at times Kline would occasionally open tenants' doors to let their dogs out when the tenants were not home, at other times the dogs would loudly bark at strangers, and on one occasion a group of dogs surrounded salesmen who had hopped over the fence. There was no evidence that

3

Coppedge's dog had previously shown aggression or bitten anyone, although other dogs had fought in the courtyard.

Geyer's opposition also included an expert declaration from an attorney with experience in various areas of real estate. The expert, Michael T. Chulak, opined on the applicable standard of care for multi-unit residential property owners to the general public, ultimately concluding that Jemmeca failed to use reasonable care to keep the property in a safe condition by the use of inadequate fencing. Chulak asserted that Geyer's injury was reasonably foreseeable and that it would have been "extremely simple to modify the fence to make it impossible for dogs to stick their heads through the gaps in the fence." Chulak pointed to chain link fencing, wood fencing, Plexiglas inserts, vinyl fencing and chicken wire as readily available methods of prevention.

The trial court granted Jemmeca's motion, concluding that a landlord's duty of reasonable care to an injured third person depends on whether the dog's vicious behavior was known to the landlord. Therefore, because Geyer conceded Jemmeca had no knowledge of the dog's alleged dangerous propensity, summary judgment was appropriate. The court did not rule on evidentiary objections Jemmeca filed to Chulak's declaration, but did state that Chulak's opinions were not relevant to the ultimate issue of whether Jemmeca had knowledge of the dog's vicious character. Geyer timely appealed.

DISCUSSION

Geyer asserts that the trial court erred in concluding Jemmeca owed him no duty of care because Jemmeca was not an "absentee" landlord. He contends the cases relied on by the trial court to reach its conclusion that Jemmeca only owed a duty of care if

4

Jemmeca had actual knowledge of the dog's dangerous propensity are distinguishable because Jemmeca did not cede control of the courtyard. Rather, Jemmeca maintained control of that common area and, in fact, encouraged its tenants' dogs to roam there freely. Based on these undisputed facts, Geyer asserts, Jemmeca owed a duty of care to passersby under the factors set forth in *Rowland*, *supra*, 69 Cal.2d 108. We agree.

I

Code of Civil Procedure section 437c, subdivision (c) provides that summary judgment is to be granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. A defendant "moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) A defendant may meet this burden either by showing that one or more elements of a cause of action cannot be established or by showing that there is a complete defense. (*Ibid*.) If the defendant's prima facie case is met, the burden shifts to the plaintiff to show the existence of a triable issue of material fact with respect to that cause of action or defense. (*Aguilar*, at p. 849; *Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261.)

We review a summary judgment ruling de novo. (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972.) "In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment." (*Lenane v. Continental Maritime of San Diego, Inc.* (1998) 61 Cal.App.4th 1073, 1079.) "[W]e are not bound by the trial

5

court's stated reasons for its ruling on the motion; we review only the trial court's ruling and not its rationale." (*Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1402.)

## II

" ' "Generally, one owes a duty of ordinary care not to cause an unreasonable risk of harm to others. . . ." [Citation.]' [Citation.] 'Civil Code section 1714 sets forth the general duty of a property owner toward others: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." The application of this provision entails an inquiry as to "whether in the management of his property he has acted as a reasonable [person] in view of the probability of injury to others . . . ." [Citations.]' [Citation.] A landowner ' " 'has an *affirmative duty* to exercise ordinary care to keep the premises in a reasonably safe condition, and therefore must *inspect* them or take other proper means to ascertain their condition. And if, by the exercise of reasonable care, he would have discovered the dangerous condition, he is liable.' " [Citation.]' [Citation.]" (*Salinas v. Martin* (2008) 166 Cal.App.4th 404, 411-412 (*Salinas*).)

" 'Although it is true that some exceptions have been made to the general principle that a person is liable for injuries caused by his failure to exercise reasonable care in the circumstances, it is clear that in the absence of statutory provision declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, *no such*

6

*exception should be made unless clearly supported by public policy.* [Citations.]'
[Citations.]" (*Uccello v. Laudenslayer* (1975) 44 Cal.App.3d 504, 510 (*Uccello*).)
Historically, California's public policy "has precluded a landlord's liability for injuries to
his tenant or his tenant's invitees from a dangerous condition on the premises which
comes into existence after the tenant has taken possession." (*Ibid.*) " ' "Because a
landlord has relinquished possessory interest in the land, his or her duty of care to third
parties injured on the land is attenuated as compared with the tenant who enjoys
possession and control. Thus, before liability may be thrust on a landlord for a third
party's injury due to a dangerous condition on the land, the plaintiff must show that the
landlord had actual knowledge of the dangerous condition in question, plus the right and
ability to cure the condition." ' " (*Salinas*, *supra*, 166 Cal.App.4th at p. 412.)

"To this general rule of nonliability, the law has developed a number of
exceptions, such as where the landlord covenants or volunteers to repair a defective
condition on the premises (*Scholey v. Steele*, 59 Cal.App.2d 402, 405; *Minolletti v.
Sabini*, 27 Cal.App.3d 321, 324), where the landlord has actual knowledge of defects
which are unknown and not apparent to the tenant and he fails to disclose them to the
tenant (*Shotwell v. Bloom*, 60 Cal.App.2d 303, 309-310), where there is a nuisance
existing on the property at the time the lease is made or renewed (*Burroughs v. Ben's
Auto Park, Inc.*, 27 Cal.2d 449, 453-454), when a safety law has been violated (*Grant v.
Hipscher* (1967) 257 Cal.App.2d 375, 382-383), or where the injury occurs on a part of
the premises over which the landlord retains control, such as common hallways, stairs,

7

elevators or roof (*Johnston v. De La Guerra Properties, Inc.*, 28 Cal.2d 394, 400)." (*Uccello*, *supra*, 44 Cal.App.3d at pp. 510-511.)

"A common element in these exceptions is that either at or after the time possession is given to the tenant the landlord retains or acquires a recognizable degree of control over the dangerous condition with a concomitant right and power to obviate the condition and prevent the injury. In these situations, the law imposes on the landlord a duty to use ordinary care to eliminate the condition with resulting liability for injuries caused by his failure so to act." (*Uccello*, *supra*, 44 Cal.App.3d at p. 511.) Consistent with this rule, " 'a landlord owes a duty of care to his tenant's invitees [and third parties] to prevent injury from the tenant's vicious dog when the landlord has "actual knowledge" of the dog's vicious nature in time to protect against the dangerous condition on his property.' " (*Salinas*, *supra*, 166 Cal.App.4th at p. 413.) This exception, however, is not a defense where, as here, the landlord *retains control* over the potentially dangerous condition and, accordingly, the "concomitant right and power to obviate the condition and prevent the injury." (*Uccello*, at p. 511.)

### III

The trial court accepted Jemmeca's argument that Jemmeca could not be held liable for the injuries sustained by Geyer because it did not have actual knowledge of the dog's dangerous propensities. The facts presented here, however, are unlike the dog bite cases in which a landlord is excused from a duty of care. Importantly, in each of those cases the landlord did not have control over the property when the dog bite occurred. (See *Uccello*, *supra*, 44 Cal.App.3d at p. 507 [landlord under no duty where tenant had

8

exclusive control of home and where landlord was not aware of dog's vicious tendency];

*Donchin v. Guerrero* (1995) 34 Cal.App.4th 1832, 1835 [duty of landlord only if

knowledge of dogs' vicious tendency where tenant dog owner had exclusive control of

single family home]; *Lundy v. California Realty* (1985) 170 Cal.App.3d 813, 816 [no

duty where home was a single family residence under exclusive control of tenant and

landlord had no knowledge of dog's vicious tendency]; *Yuzon v. Collins* (2004)

116 Cal.App.4th 149, 152 [same].)[2]

In this case, the parties do not dispute that Jemmeca maintained control of the

courtyard where the dog was located when it bit Geyer. Specifically, the courtyard was

shared by all of the dog-owning residents, including Kline. Further, Jemmeca promoted

the property with a large "pet friendly" sign in front of the complex, and Jemmeca

provided its tenants' dogs with unfettered access to the courtyard. Indeed, Kline

encouraged residents to allow their dogs to use the common area, even letting dogs out

from tenants' apartments into the courtyard when their owners were not home.

---

[2]      At oral argument, Jemmeca's counsel argued this case was indistinguishable from
*Chee v. Amanda Goldt Property Management* (2006) 143 Cal.App.4th 1360 (*Chee*).
*Chee*, however, supports our conclusion that the exception to property owner liability
applied there does not preclude liability in this case. In *Chee*, a condominium lessor was
sued by a neighboring resident who was bitten by a dog owned by the lessor's tenant.
(*Id*. at p. 1364.) The lessor hired a third party manager "to find a tenant and collect rents"
and, under the Covenants, Conditions and Restrictions (CC&Rs) of the condominium
complex, the lessor delegated "his right to enjoyment of the common areas and facilities"
to the tenant. (*Id*. at pp. 1364-1365) Because the lessor owner lacked the right to control
his tenant's use of the condominium and its common areas, the court appropriately
concluded the lessor could not be held liable for the dog bite without actual knowledge of
the dog's dangerous propensity. (*Id*. at pp. 1369-1370.)

Thus, unlike the landlords in the cases Jemmeca relies on, Jemmeca retained "a recognizable degree of control over the dangerous condition with a concomitant right and power to obviate the condition and prevent the injury." (*Uccello*, *supra*, 44 Cal.App. at p. 511; see also *Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1158 [responsibility for injuries occurring in common areas " 'rests on the owner, who has the right of control and the duty to maintain that part of the premises in a safe condition" '].) As applicable here, therefore, because Jemmeca "did not relinquish the right . . . to prevent foreseeable harm" to its tenants in the courtyard, "we must examine the totality of the factors 'set forth in *Rowland* . . . .' "[3] (*Salinas*, *supra*, 166 Cal.App.4th at pp. 414, 415.)

IV

"*Rowland* enumerates a number of considerations . . . that have been taken into account by courts in various contexts to determine whether a departure from the general rule [i.e., that a duty of due care exists to avoid injuring others] is appropriate: 'the major [considerations] are *the foreseeability of harm to the plaintiff*, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and

---

[3] Contrary to Jemmeca's suggestion, Coppedge's interest in the common area courtyard does not negate or otherwise affect Jemmeca's interest in (and duties associated with) the common area courtyard. Like the property owner in *Salinas*, Jemmeca was not restrained by or precluded from overseeing and controlling the common area. (*Salinas*, *supra*, 166 Cal.App.4th at p. 414.) Rather, Jemmeca maintained control over the courtyard and had the ability to address the risks created by allowing its tenants' dogs to roam free in that area.

consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' (Italics added.) [Citation.] The foreseeability of a particular kind of harm plays a very significant role in this calculus [citation], but a court's task—in determining 'duty'—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 572-573, fn. 6.)

"Foreseeability is a 'crucial factor' in determining not only the existence of the landowner's legal duty, but its 'scope.' " (*Barber v .Chang* (2007) 151 Cal.App.4th 1456, 1464, fn. omitted.) That scope " 'is determined in part by balancing the foreseeability of the harm against the burden of the duty to be imposed. [Citation.] " '[I]n cases where the burden of preventing future harm is great, a high degree of foreseeability may be required. [Citation.] On the other hand, in cases where there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required.' " ' " (*Salinas*, *supra*, 166 Cal.App.4th at p. 415, quoting from *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673.) Accordingly, we must look at the foreseeability of the danger and the measures required to prevent the harm.

Here, with regard to foreseeability: Pedestrians walking by the apartment complex on a busy street in Pacific Beach could easily see and reach playful dogs in the courtyard;

the dogs inside the courtyard could easily stick their snouts outside the courtyard between four-inch gaps in the wrought iron bars; and dogs bite people (with or without provocation or warning). Thus, the danger presented here was easily anticipated—i.e., foreseeable.[4]

Correspondingly, the precautions that Jemmeca could have taken to reduce or eliminate the risk of harm were not burdensome. Unlike the burden that would exist if the danger were inside the leased premises or in outside areas controlled exclusively by the tenants, any measures taken to prevent the danger here would not require Jemmeca "to encroach upon [it's] tenant[s'] possession and enjoyment of the property . . . ." (*Salinas*, *supra*, 166 Cal.App.4th at p. 416.) Jemmeca easily could have installed either a solid fence or a fence with smaller gaps that would have prevented passersby from accessing the dogs.[5] Even a sign cautioning outsiders not to pet the dogs or a requirement that owners supervise their dogs in the common courtyard area could have lessened the danger.

---

[4] The foreseeability of a pedestrian crossing over ground vegetation to pet a dog whose snout is protruding through a fence and being bitten is far greater than the foreseeability of the accident in *Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138 on which Jemmeca relies. In *Wiener*, our Supreme Court declined to ascribe a duty of care to the owner of a childcare center where a person intentionally drove a car through a fence that enclosed a playground at the center. (*Id*. at p. 1144.)

[5] Jemmeca asserts that Chulak's expert declaration is inadmissible, because it consists of opinions on the ultimate issue of duty which is a question of law for the court. We agree that the opinions are not relevant for purposes of establishing a duty of care (*Thompson v. Sacramento City Unified School Dist.* (2003) 107 Cal.App.4th 1352, 1373), and we do not find them otherwise helpful in reaching our conclusion that Jemmeca owed Geyer a duty of care.

12

Because Jemmeca had the responsibility for maintaining the common area where the incident occurred, Jemmeca "participated in creation of the dangerous condition of the property by authorizing or permitting the dogs" to be loose in the courtyard with a fence through which they could stick their snouts. (*Salinas*, *supra*, 166 Cal.App.4th at p. 416.) Thus, "a measure of 'moral blame' must be attributed to [Jemmeca] for failure to avert the harm that ensued" (*ibid*.), although we attribute a low level of blame under the facts presented here.

Finally, the other *Rowland* factors also support the existence of a duty in this case: The record reflects that property owner is insured for the loss, and the public policy of preventing future injuries is served by requiring property owners who choose to create a pet friendly rental in the manner that Jemmeca did to bear the costs associated with that choice.

For the foregoing reasons, Jemmeca owed a duty of care to Geyer as a matter of law.

DISPOSITION

The judgment is reversed.  Geyer is awarded his costs on appeal.


IRION, J.

WE CONCUR:


BENKE, Acting P. J.


McDONALD, J.

14